### Johanna Kennedy, Appellee, v. Modern Woodmen of America, Appellant.

1. EVIDENCE—*what competent upon issue of death presumed from seven years' absence.* Investigations made after suit upon a benefit certificate has been instituted are competent where the death is sought to be established under the presumption arising from seven years continued and unexplained absence.

2. EVIDENCE—*what competent upon issue of death presumed from seven years' absence.* If information has been given to relatives of the presence of the party who has disappeared, to the effect that he had been seen at a certain time and place, failure to investigate such clue may be justified by showing the bad reputation for truth and veracity of the person who has given such information.

3. EVIDENCE—*what sufficient to establish death arising from disappearance.* It is sufficient if the facts necessary to raise the presumption of death are established by a preponderance of the evidence.

Assumpsit. Appeal from the Circuit Court of Douglas county; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in this court at the November term, 1908. Affirmed. Opinion filed May 19, 1909.

TRUMAN PLANTZ and W. W. REEVES, for appellant.

ECKHART & MOORE, J. M. MERICA and JOHN H. CHADWICK, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit by Johanna Kennedy against the Modern Woodmen of America to recover the amount of a benefit certificate issued to James Kennedy and payable at his death to his wife Johanna. A trial by jury resulted in a verdict against the defendant for $2,000, a *remittitur* by plaintiff of $1.10 and judgment against defendant for $1,998.90. To reverse said judgment the defendant prosecutes this appeal.

The count of the declaration upon which the recovery was had alleges with respect to the death of James Kennedy in substance that on December 13, 1898, the said James Kennedy suddenly and without explanation left and disappeared from his home near Tuscola in Douglas county, and has been unaccountably absent ever since; that he has never returned or been heard of since his disappearance, although diligent and continued search has been made for him; that on December 13, 1905, the said absence of said James Kennedy had continued seven years, whereby the said James Kennedy was presumed in law to be dead, and that he departed this life on said last named date.

It is admitted by counsel for appellant that under the law of this state death may be presumed from evidence showing that the person claimed to be dead left his place of residence intending to return to the same, and that he had been absent from such place of residence for seven years, and that diligent search and inquiry has been made for him throughout the seven years without any information from or concerning him, and further, that the presumption of death as thus established is sufficient to authorize a recovery upon a benefit certificate such as was held by James Kennedy.

It is urged on behalf of appellant that the evidence

in this case is not sufficient to raise the presumption of death and that the trial court erred in its rulings upon the admission of evidence and in refusing certain instructions. The questions raised as to the sufficiency of the evidence to sustain the presumption of death and the rulings of the trial court upon the evidence are so intimately related that they must of necessity be considered together.

It is established by the evidence that on December 13, 1898, and for some time prior thereto, James Kennedy resided with his family, consisting of his wife, the appellee, and six children, upon a dairy farm near Tuscola; that he was then 42 years of age, in good health, and that his relations with his family were kindly and affectionate; that during the forenoon of the day named he performed his usual work and in the afternoon drove with his wife to Tuscola, returning home with her about 6 P. M.; that upon that day he drew $185 from the bank upon a check given to him in settlement for grain sold and then had in his possession about $200 in cash; that he informed his family he was going to Champaign for the purpose of paying an installment of $200 rent for his farm, which would be due January 1st following, and would return on the next train due at Tuscola at 1 A. M.; that he requested his family not to sit up for him but to leave the south door of the house unlocked and to leave plenty of coal so he could fix the fire when he returned; that he purchased a ticket at the Illinois Central depot for his transportation from Tuscola to Champaign, and when the train arrived at Tuscola he was seen to leave the depot and walk toward the train; that while at the depot he met the witness F. T. Smith, who asked him if he was going away, and he replied he was there to meet some parties and that he was going away next week; that all of the members of his family and several other persons who are intimately acquainted with him, had made search and inquiry to discover his whereabouts and had written for information as to

his whereabouts to all places where he was likely to have gone, if living, but without avail, and that he had not communicated with any member of his family or any intimate acquaintance since his departure from Tuscola; that appellee had prior to the last trial of this cause recovered a judgment in her suit against the Court of Honor upon a benefit certificate issued to her said husband and payable to her in the trial of which suit the said issue was involved.

Upon her cross-examination when called as a witness in her own behalf, appellee stated that prior to the commencement of this suit and within seven years after his disappearance she heard that her husband had been seen in Salt Lake City, Utah; that this information was communicated to her in June, 1904, by her son, who had then been informed by a woman that she had seen his father there in 1900; that appellee had written to the chief of police, mayor and postmaster at Salt Lake City, and had received replies to her letters, which replies were in the possession of her counsel; that said letters addressed to Salt Lake City were written since this suit was commenced and after the trial of the suit against the Court of Honor.

Counsel for appellant moved the court to exclude that portion of the testimony of the witness which related to her having written letters to Salt Lake City, because such letters were shown to have been written after the commencement of the suit, which motion was overruled. It is urged that the admission of this evidence was incompetent and prejudicial to appellant because it was incumbent upon appellee to show facts sufficient to raise the presumption of death within seven years after the disappearance of her husband, and before this suit was brought; that investigations made after that time could not aid the court or jury in determining the question and that by the admission of such evidence the jury would probably be led to believe that the investigation made by appellee at a subsequent time was sufficient. We are not prepared

to say upon this record that the evidence of appellee in that regard was so wholly irrelevant as to have required its exclusion. Appellee had testified in her direct examination that ever since the disappearance of her husband she had written to persons at different places, including Salt Lake City, in an effort to locate her husband.

Appellant did not ask to see copies of the letters so written by her, or the replies, if any received by her to such letters. It does not appear whether the letters written by appellee to Salt Lake City related to the presence of Kennedy at that place within seven years after his disappearance or thereafter and at the time the said letters were written. If said letters related to the presence of Kennedy at that place within seven years after his disappearance, we think in view of certain other evidence in the record hereinafter referred to, that the evidence was competent notwithstanding it related to letters which were written after this suit were commenced. Furthermore, the record discloses that James Kennedy, John Kennedy and Martin Kennedy, sons of appellee, testified without objection that they had written like letters to Salt Lake City and other places since the commencement of this suit. The jury could not have been led to believe that any investigation made subsequent to seven years after the disappearance of James Kennedy, was sufficient to raise the presumption of his death, because they were specifically instructed at the instance of appellant that the search and inquiry necessary to be made to raise the presumption of death must have been made within seven years after his disappearance, and that the requirement of the law in that regard would not be complied with by making search and investigation since the commencement of this suit.

Upon the re-direct examination of appellee and upon her direct examination when recalled as a witness in her own behalf, she testified that one Myrtle King Rogers told her son in the summer of 1904 about see-

ing her husband in Salt Lake City, and that her son had then so reported to her; that said Myrtle King Rogers, who was a daughter of Dan King, a former resident of Tuscola, came to Tuscola when she was about ten years of age, and lived there until she arrived at young womanhood; that she did not make any search for her husband under the information she so received through Mrs. Rogers. Over the objection of counsel for appellant appellee was further permitted to testify in substance that the reason she did not then make such search was because the general reputation of Mrs. Rogers for truth and veracity was not good; that Mrs. Rogers was untruthful and that she, appellee, thought it wasn't worth while to hunt. Other witnesses called on behalf of appellee were permitted over the objection of appellant to testify to the general reputation of Mrs. Rogers for truth and veracity during the time she resided in Tuscola as being bad, and also as to contradictory statements made by her concerning where she had seen Kennedy since his disappearance.

The question of the propriety of this impeaching evidence as thus presented for consideration is not to be determined upon precedent and authority, as none appears to exist. While Mrs. Rogers was not a witness in the case, appellant sought upon the trial and now seeks to give to her statement that she had seen Kennedy in Salt Lake City in 1900 the force and effect of direct evidence that Kennedy was then alive and thus rebut the presumption of death arising from his absence from his usual place of abode for seven years together with proof that although diligent search and inquiry had been made no communication or intelligence had been received concerning him and of whom no account could be given. It is insisted that when Mrs. Rogers told the son of James Kennedy that she had seen his father in Salt Lake City, and when such information was communicated by the son to appellee and other members of the family, it constituted in-

formation and knowledge by the family of the existence and whereabouts of James Kennedy during the seven years, and that appellee and the members of the family, if they doubted such information, were required to investigate and ascertain whether or not it was true; that not having done so but having elected to let the matter remain as it was they are estopped from claiming that he has been absent from home without any information having been received concerning him. Predicated upon this insistence appellant at the close of the evidence for appellee offered a peremptory instruction which was refused by the court.

Whether or not appellee and the members of the family whose duty it was to make search for James Kennedy had performed their duty in that regard was a question of fact for the jury. Policemen's Benevolent Association v. Ryce, 213 Ill. 9.

The solution of this question involved a consideration by the jury of the character and reliability of the sources of the alleged information concerning the whereabouts of Kennedy, which was shown by the evidence to have been communicated to those whose duty it was to make inquiry and search for him, and when the persons bound to make such inquiry and search are charged with the failure to act upon such information we perceive no substantial reason why the sources of such alleged information may not be discredited and impeached, and the admission of evidence to that end contravenes no established rule of law. If the source of such information is known to the person to whom the information is communicated and is shown by the evidence to be unreliable and unworthy of credit, a failure to act upon such information cannot operate to estop such person from asserting a fact inconsistent with such information. In such case no element of the doctrine of estoppel is presented and the doctrine is not applicable.

It is further urged that the impeachment of Mrs.

Rogers was erroneously permitted to be based upon evidence of her general reputation for truth and veracity when she was a resident of Tuscola some ten or twelve years prior to the time when she communicated the information to a son of appellee. Appellee was justified in acting upon the known reputation of Mrs. Rogers in that regard during the time she resided and was known in Tuscola, and was not necessarily bound to ascertain whether she had thereafter acquired a different reputation in the neighborhood where she resided when the statement was made.

Upon the cross-examination of James Kennedy, a son of appellee, called as a witness on her behalf, he stated that he had been told by Mrs. Rogers in 1904, that she had seen his father in Salt Lake City in 1900, and when asked by counsel for appellant what further she told him in that conversation he was not permitted to answer. The question was competent and the witness should have been allowed to answer it. The ruling of the court in this regard could not, however, have operated to the prejudice of appellant because the statement by Mrs. Rogers that she had seen Kennedy in Salt Lake City was manifestly wholly discredited by the jury.

William E. Rogers, the husband of Myrtle King Rogers, and whose deposition was taken on behalf of appellant, testified that he first saw James Kennedy in Tuscola in 1898, and that he next saw him in Salt Lake City standing on the corner of the street by the Kenyon Hotel just before Christmas in 1900; that he then had a conversation with Kennedy consisting of not over half a dozen words, in which conversation he believed he asked Kennedy if he was going home to his wife, and Kennedy replied "No," that his (the witness) wife was with him at the time and participated in the conversation which related to Kennedy leaving home; that Kennedy was dressed as a miner and pulled out a roll of bills and said that he was not going to work; that he was going to stay around Salt Lake City a short time and was then going back to the old country.

It would unduly extend this opinion to detail and discuss the evidence adduced upon the cross-examination of this witness together with other evidence in the record introduced on behalf of appellee which tended to discredit his testimony. A most careful examination of the evidence persuades us that the jury were justified in concluding that the testimony of this witness was fabricated and that he was unworthy of belief. Our attention is directed to various rulings of the trial court upon the admission of evidence tending to discredit and impeach the testimony of this witness, but we find no error in that regard and nothing therein which merits discussion.

By the 13th and 14th instructions offered on behalf of appellant and refused by the court, the jury were told that before they would be justified in finding James Kennedy to be dead all reasonable doubt of his being alive ought to be removed by the evidence. This is a civil case and not a criminal prosecution and it was not incumbent upon the appellee to establish the death of her husband by evidence beyond a reasonable doubt. It was sufficient if the facts necessary to raise the presumption of death were established by a preponderance of the evidence. Policeman's Benevolent Association v. Ryce, *supra.* The 15th and 16th instructions offered on behalf of appellant and refused by the court were properly refused because they infringed upon the province of the jury.

While the record in this case is not wholly free from error, our attention has not been directed to any error which could have operated to the prejudice of appellant upon the merits of the controversy.

The judgment of the Circuit Court will be affirmed.

*Affirmed.*