# Policemen's Benevolent Association of the City of Chicago v. Mary Ryce.

## Gen. No. 11,399.

1. DEATH—*presumption of, arising from seven years' absence.* A presumption of death arises where a person leaves his home and is continually absent therefrom for a period of over seven years, without any intelligence being received of his whereabouts within and after such period; but such presumption is not conclusive.

2. ADMISSION OF EVIDENCE—*when, cannot be complained of.* The admission of particular evidence cannot be complained of as erroneous by a party who has induced the court to receive like evidence upon his part.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed June 30, 1904.

CANNON & POAGE, for appellant; JOHN B. HEINEMANN, of counsel.

JOHN C. KING and WILLIAM J. KING, for appellee; ANDREW J. HIRSCHL, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

James Ryce on February 19, 1890, was a member of the police force of the city of Chicago in good standing, and on that day received a certificate of insurance from the appellant association, in which the appellee, Mary Ryce, then his wife, was named beneficiary, by which the association agreed to pay to her within thirty days after satisfactory evidence of the death of said James Ryce $2 for every member of the association, provided that amount should in no event exceed $2,000. On May 15, 1895, while still a member of said association in good standing, and having paid all his dues and assessments up to that time. said Ryce disappeared and has never since May 16, 1895, been heard of, although diligent search for him had been made up to the time of the commencement of this suit, August 8, 1902. Presuming that he was dead, appellee, having paid all her husband's dues and assessments, brought this suit and recovered a verdict and judgment thereon of $2,000, from which the association has appealed.

No question upon the merits is made, except that the evidence is not sufficient to justify the jury in presuming that James Ryce was dead at the commencement of the suit. This question is presented on the record by a motion made at the close of the plaintiff's evidence and renewed at the close of all the evidence, for an instruction directing a verdict in favor of the association, which was denied.

The evidence is voluminous, and upon the question presented is without substantial conflict. It shows in substance that James Ryce was married to appellee in May, 1889, and was then aged about twenty-nine years. They lived happily together as husband and wife until May 15, 1895, and had one child born to them which was nearly five years of age at that time. Mr. Ryce had been a mem-

Policemen's Benevolent Ass'n v. Ryce.

ber of the police force of Chicago prior to his marriage and was thereafter from time to time until May 7, 1895, when, under a general order of the then mayor, he was, with 500 other police officers, discharged.   During his time of service he was discharged once or twice prior to May, 7, 1895, as the evidence tends to show, because of changes in the city administration from Democratic to Republican.   The evidence on behalf of the appellant is also to the effect that he was once discharged because of absence from duty without permission, intoxication and neglect of duty.   There is also a conflict in the evidence as to Mr. Ryce's habits with regard to the use of intoxicating liquors, but we are inclined to the view that its weight, while it tends to show he was in the habit of drinking occasionally, is that he was in no way seriously affected thereby.   On May 15, 1895, he left his home at Cragin near the western limits of Chicago, in the morning, after bidding goodbye and kissing his wife and little girl, and stating to the former that he would return on the afternoon train.   His wife says that she expected that he would return on the afternoon train, but he did not; that she waited until the twelve o'clock train was due, but he did not come, and she has never since heard anything from him.   On the second day after his disappearance appellee's brother and a police officer named Lyons inquired for Mr. Ryce at a saloon on West Madison street in Chicago, where it was suggested that he might go, and were told by a bartender that Mr. Ryce had been in the saloon the previous day or evening.   With this exception no information or intelligence as to his whereabouts has ever been received by his wife, relatives, friends, or any one else, so far as known, although a dispatch containing his description in detail, and that he had been missing since the previous Wednesday, which was May 15, was sent out on May 21, 1895, to each police station in the city of Chicago, and it was read to the police officers at roll-call in at least one station.   It appears that it was the custom to read at roll-call such dispatches at every police station in the city.   The record of the dispatch in question kept by

the police department in Chicago in the regular course of business indicates that this dispatch was sent to all the stations in Chicago on said May 21. The evidence shows that appellee made numerous inquiries of her neighbors and friends and of numerous relatives of Mr. Ryce, and as she says, of "every one I came in contact with, all that I knew," but was unable to get any information with regard to him. It appears that his disappearance was a matter of common talk among his acquaintances and neighbors, that many of them took pains to inquire after him to find out his whereabouts, but no information was ever received by the many who were called to testify. Also several of his relatives who were called to testify stated that they made like inquiries, but none of them could get any information of him. It is shown that one of his sisters, Mrs. Bridget Walsh, with whom he lived for about five years prior to his marriage and whom he visited once or twice a week at her home after his marriage, notified certain of his relatives in Wisconsin and in Ireland of his disappearance, but received no communication from them. She says in this regard: "I have kept up the correspondence among my relatives, and inquired for my brother and never heard from him in any way. * * * I corresponded with my mother in Ireland, wrote that my brother had disappeared and that I could not find him and I believed him dead. I asked her if she had heard from him. She said no. I got a reply by letter about six weeks later. I have not that letter. I don't know where it is."

Numerous other circumstances appear in the evidence that have a bearing upon the question at issue, and which, taken in connection with what has been stated, we think sufficient to justify the verdict of the jury in favor of the appellee. Indeed, had the verdict been in favor of the association, it is a serious question as to whether it would not have been our duty to set it aside as being manifestly against the evidence.

The court, among others, gave to the jury, at the request of appellee, the following instruction:

"The court instructs the jury, as a matter of law, that if you find from the preponderance of the evidence in this case that James Ryce, the insured, left his residence and home and has been continually absent therefrom for a period of over seven years without any intelligence being received of his whereabouts by the members of his family, relations, neighbors and acquaintances, within said period, or at any time thereafter, then such continuous absence, together with such lack of intelligence, raises the presumption of death of the said James Ryce, and the jury on such proof have a right to presume his death."

And on behalf of appellant the following instruction:

"The jury are instructed that if you believe from the evidence and all the facts and circumstances shown on this trial that the insured, James Ryce, was not dead at the time of the commencement of this suit, then your verdict must be for the defendant."

It is claimed that the above instruction given for appellee in effect required the jury to find in her favor, since it does not permit the jury to consider the circumstances attending Mr. Ryce's disappearance and bearing upon the question as to whether he was, in fact, dead. We think the contention is not sound, and is not supported by the cases cited and especially relied on, viz: Winter v. Supreme Lodge, etc., 96 Mo. App. 1–19; Mutual B. L. I. Co. v. Martin, 108 Ky. 11–18, and Dunn v. Travis, 67 N. Y. Sup. 745. In the Winter case the court, among other things, says: "The true rule to be adduced from the authorities is, that the inference of death arising from an unexplained absence of seven years, is not a conclusive inference. It yields to the influence of a conflicting presumption of the same class and of more specific character, as, for example, the presumption of innocence in the conduct of the party in question, illustrated by cases where these two presumptions have been found to antagonize. King v. Inhabs., 2 A. & E. 540; Lancaster v. Ins. Co., 62 Mo. 129. The deduction which may be drawn from the absence of a person for seven years without tidings supplies the place of more specific proof of death. It warrants a jury in finding the fact of death, after due consideration of all the other facts

in evidence, but it is not a conclusion which the jury are obliged to draw, in the face of proof which furnished ground for other inferences. It should not be stated to the jury as a rule of law imposing an imperative obligation upon them in a case like this."

And in the Martin case the court, in speaking of the presumption of death by reason of seven years unexplained absence from the state, say that "such presumption (like that of innocence or sanity) might be rebutted by the proof, and that the jury should consider, in connection with this presumption, all the circumstances shown by the evidence attending the departure of Tate, and the reasons for his absence, if any; and it was a question for them to determine on all the evidence whether Tate was alive or dead when the suit was filed."

The facts of the Dunn case are quite different from those at bar, and there was no effort on the part of any one of the family of deceased to ascertain whether he was alive or dead until thirty-one years after he went away, and there was nothing to indicate that the relations between him and his family were such as would induce him to give information as to his whereabouts.

If, however, it can be said that these cases support appellant's contention, the law of this state is, we think, established on this matter by the decisions of our Supreme Court. In Hitz v. Ahlgren, 170 Ill. 60–3, after stating the general rule that death is presumed from seven years' absence from a person's usual place of abode or resort without anything being heard from him within that time, the court said: "In order to enforce the presumption of death of a person after an absence of seven years, there must be evidence of diligent inquiry at the person's last place of residence, and among his relatives, and any others who probably would have heard from him if living. (Citing cases, including Whiting v. Nicholl, 46 Ill. 230.) Long absence alone, no matter how long continued, is not sufficient to raise the presumption of death. There must be shown an absence of seven years or more from the established resi-

dence of the party, before the presumption of death can be raised." To a like effect are Johnson v. Johnson, 114 Ill. 611–16, and Reedy v. Millizen, 155 Ill. 636–8.

We are of opinion that under these rulings the instruction for the appellee taken in connection with that on behalf of appellant, fairly and properly submits the case to the jury. The former instruction does not require the jury to exclude from consideration the facts and circumstances in evidence, as claimed, and does not, as in the Winter case, place upon them an imperative obligation to presume death from the hypothesis stated in that instruction.

It is also claimed that the court erred in refusing certain instructions requested by appellant, but we think there was no error in this respect. The refused instructions were calculated to mislead the jury, and we think those given were sufficient.

A further claim is made that the court erred in admitting in evidence a record found in the office of the police department of the city of Chicago, kept by the desk sergeant in the ordinary course of his duty, for the reason that such duty was not imposed upon him by law. If such ruling was error, and this we do not decide, appellant is in no position to complain, since it induced the court to admit in evidence like records of the police department of said city. Whalen v. Stephens, 92 Ill. App. 236, affirmed 193 Ill. 121–32.

There being, in our opinion, no reversible error in the record, the judgment of the Circuit Court is affirmed.

*Affirmed.*