Irene E. Mueller, Appellee, v. John Hancock Mutual Life Insurance Company, Appellant.

Gen. No. 37,723.

Heard in the second division of this court for the first district at the October term, 1934. Opinion filed June 13, 1935.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellant.

JAMES A. PETERSON, of Chicago, for appellee; FREDERICK R. NYBERG, of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This is an action brought by Irene E. Mueller, plaintiff, against defendant, John Hancock Mutual Life Insurance Company, upon three insurance policies issued by defendant to Otto E. Mueller, in and by which defendant agreed to pay plaintiff, the wife of Otto E. Mueller, in case of his death $1,480. A trial by the court without a jury resulted in a finding for plaintiff in that amount and judgment thereon. This appeal followed.

The declaration filed December 19, 1933, alleged that defendant had issued three policies on the life of Otto E. Mueller, two for $370 each and one for $740; that plaintiff was his wife and the beneficiary named in the policies; that July 6, 1925, Mueller left his home in

Chicago and has not returned; that he has not been heard from since July 7, 1925; that, by reason of his unexplained and continued absence for the "space of seven years," the law presumes that he died July 6, 1932; that all premium payments were made on the aforesaid policies; that since his departure plaintiff has made a diligent and continuous search for the assured and found no trace of him; and that September 10, 1932, she furnished and delivered to defendant satisfactory proof of his death.

Defendant filed special pleas, averring that the policies are payable upon receipt by defendant of satisfactory proof of the death of the assured and that such proof has never been received; that, at or about the time of the alleged disappearance of Mueller, he was charged with wrongfully taking funds from defendant, by whom he was employed; and that, by reason of the acts and circumstances surrounding his disappearance, no presumption of death in law could or did arise by reason of such disappearance.

It appeared that Mueller, who had been employed by defendant company as an insurance agent for two years at that time, left his home on the morning of July 6, 1925, and that his wife received from him through the mail the following letter on the morning of July 7, 1925:

"Chicago, Ill. 7/6, 1925.

Dear Irene,

Sorry that it had to come to this, but it cannot be helped now. The reason for all is drink and me not being man enough to be able to fight it. I am headed for Canada, what I will do, I do not know. If you want a divorce, you probably can get it any time. If not, well, I'll try my best to get out of this mess. I am about $200 short on my book. Commissions that I have got coming will make up for part of it, the rest I shall pay as soon as possible. As soon as you get this

letter, you better go to Theede's and tell them what happened; also stop the milk, that company I owe another 35.00 Doll. I gave Theede a check for 30.00 Doll; its no good either. About the flivver, well do as you please, sell or keep it. Jimmie might fix it up for you. Give the kids my regards and tell Georgina she should pray for her papa and everything will be allright. My debit book and grip is in the car give it to anybody of the Hancock Company.

With love and kisses to you and the kids,

Your

Ed

Send you another letter as soon as I get time.''

The evidence disclosed that the assured married plaintiff in 1914; that they resided at 6219 Bernice avenue, Chicago, Illinois, with their three minor children, the eldest of whom was six years old and the youngest one year at the time of their father's disappearance; that they lived in the same building with the Theede family; that Mueller's family relationships were kindly and affectionate; that prior to July 6, 1925, the assured had not left his wife for any extended period of time; that, after he left his family, plaintiff had his picture placed in the Chicago Police Bulletin with his description and a request for information as to his whereabouts; and that she went to the court of Domestic Relations, the Legal Aid Society, and to Mr. Theede, Mueller's friend, also an agent for defendant, in efforts to locate the assured, but failed to find him.

Plaintiff and her eldest daughter, Georgina, 15 years old at the time of the trial of this cause, testified that no communication had been received from assured by either of them since his letter of July 6, 1925. Mueller's mother and brother, who resided in Germany at the time of his disappearance but had come to this country in May, 1927, testified that although the assured had communicated with them more or less reg-

ularly prior to his disappearance, no word was received from him by either of them since that time nor had either of them seen him.

It is urged that the facts and circumstances surrounding his disappearance, as disclosed in his letter to plaintiff, clearly indicated Mueller's intention to remain away permanently. We are unable to agree with this contention. To us his letter portrays rather the thoughts of a brooding man, remorseful of his conduct. Because of what he considered his improper treatment of his wife, he suggested that if she cared to secure a divorce from him "you probably can get it any time." In the very next sentence he stated, in effect, that if she did not divorce him, "I'll try my best to get out of this mess." His letter evinced devotion, love and affection for his wife and children. He solicited the prayers of his six-year-old daughter that "everything will be allright." He promised another letter soon. A careful analysis of his letter convinces us that, rather than indicating an intention not to return, Mueller at least intimated therein his hope and desire, after he pulled himself together and got on his feet, to return to the wife and children whom he loved. In our opinion the fact that his disappearance is explained does not overcome the presumption of death after his continued, unexplained absence for seven years.

Defendant claims that the reason for the absence of Mueller was explained by his admitted shortage in his accounts and the possibility or probability of his being prosecuted, and that no presumption of death arises for these reasons.

In *Piersol v. Massachusetts Mut. Life Ins. Co.*, 260 Ill. App. 578, where the assured's accounts were being audited before his departure, and a shortage thereafter discovered, resulting in an indictment charging him with embezzlement of $1,742.40, after discussing

and distinguishing many decisions of the courts of review of this State on the question, the court said at p. 587:

"An examination of the cases indicates that the prerequisites which would justify a presumption of death are (1) that the person whose death is in question has disappeared from his last known abode, domicile or residence; (2) that he has neither returned thereto nor communicated with those with whom he would naturally communicate if alive; (3) that inquiry has been made at the last known place of abode of the persons who would naturally hear from him without obtaining information indicating that he is alive. Out of proof of such material facts a presumption of death arises as a matter of law, but it is a rebuttable presumption which may be disproved by evidence of facts tending to show that the party presumed to be dead is alive. See Jones, Commentaries on Evidence, 2nd ed., vol. 1, secs. 285–294; 8 R. C. L., pp. 708, 709, and see page 714."

So in the instant case the mere fact that there was a net shortage of about $200 in assured's accounts cannot be considered such an explanation of his continued absence for seven years as to rebut the presumption of his death.

Plaintiff's undisputed evidence as to the material facts was ample to give rise to the presumption of death as a matter of law, and, inasmuch as the record discloses no evidence that assured is alive, it is unnecessary to discuss defendant's contention that the verdict and judgment are against the manifest weight of the evidence.

For the reasons indicated the judgment of the superior court is affirmed.

*Affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.