## Annie Carey, Appellant, v. Metropolitan Life Insurance Company, Appellee.

### Gen. No. 41,041.

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed May 22, 1940.

ALFRED O'CONNOR and WILLIAM SCHULZE, both of Chicago, for appellant.

HOYNE, O'CONNOR & RUBINKAM, of Chicago, for appellee; NATHANIEL RUBINKAM and W. W. PATTERSON, of Chicago, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Annie Carey, plaintiff, brings this appeal from an order and judgment entered in the municipal court of Chicago in favor of the defendant the Metropolitan Life

Insurance Company and against plaintiff. Suit was brought by plaintiff against the Metropolitan Life Insurance Company to recover on a certain life insurance policy issued by the defendant company for $1,500 upon the life of plaintiff's son, Joseph Carey, plaintiff having been named as beneficiary in said policy.

Plaintiff's statement of claim alleges the issuance of the policy and that Annie Carey, plaintiff, was named as beneficiary and that Joseph Carey, the insured, had been absent and unheard of for more than seven years; that he disappeared on or about July 28, 1930 and that the presumption of his death arose on July 28, 1937; that due proof of loss had been made to the defendant company, but that it failed to pay to said plaintiff the sum of $1,500 due by virtue of the insurance policy No. 4285685A, issued by the defendant, insuring the life of Joseph Carey.

The defendant filed an affidavit of merits admitting the issuance of the policy and that it was in full force and effect and that all premiums had been paid thereon, but denied that Joseph Carey was dead.

No issue is raised upon the pleadings and all material facts stand admitted.

The judgment of the trial court was entered upon a finding of the court on motion of the defendant to find for the defendant at the close of plaintiff's case. The hearing was had before the court without a jury.

It appears from the evidence that the insured was the son of the plaintiff; that he was born in Chicago, Illinois on December 16, 1906, and up to May 3, 1930, he had resided and had been living with his mother, the plaintiff herein, in Chicago; that on May 3, 1930, the insured left Chicago, Illinois, for Kansas City, Missouri, for the purpose of finding employment; that he communicated weekly with his mother by mail until July 28, 1930, on which day his mother received the last letter from the insured and this was the last time he was heard of.

The evidence further shows that in the month of October, 1930, the plaintiff being anxious about her son and about his safety, went to Kansas City, Missouri in search of him; that plaintiff inquired for her son at the Missing Persons Bureau in Kansas City, Missouri and the police officials in Kansas City, Missouri, but obtained no results; that in November, 1930, plaintiff notified the insurance company of the disappearance of the insured; that not having heard from her son for the period of two years, the plaintiff again went to Kansas City, Missouri, in the month of October, 1932, in search of her son and again inquired of the police, the Traveler's Aid and the Missing Persons Bureau, but got no results; that while in Kansas City, plaintiff caused an advertisement to be placed in the Kansas City Star, which was in words and figures, as follows: ''Any one knowing the whereabouts of Joe Carey, communicate with Annie Carey, 732 E. 88th St., Chicago, Illinois.''

The evidence further shows that a similar advertisement was placed in the Kansas City Times and that plaintiff made further inquiry in search of her son from the Chicago police and made further inquiries of the police in Kansas City, Missouri, communicating with them by mail, but failed to get any results or information as to the whereabouts of her son, the insured.

The evidence further shows that on June 27, 1930, the insured wrote a letter to his mother, which letter was postmarked Fort Worth, Texas, in which he stated that he would go back to Kansas City within a few days; that on May 11, 1930, the insured wrote his mother from Kansas City, Missouri, which letter showed the pleasant relationship and existing conditions between his mother and himself; that continuing her search for her son, the plaintiff again went to Kansas City, Missouri, and as a result of her search, she received a letter from the Bureau of Missing Persons, Kansas City, Missouri, dated January 24, 1939, without obtaining any information as to the whereabouts of her son; that other

inquiries were made by relatives of the insured in an endeavor to get some trace of him, but without any results.

The evidence further shows that because of a letter which was received by the plaintiff, there is a possibility that the insured may have met with foul play in the year 1930; that it appears from the letter that the insured was married; that his wife's brother saw the insured enter a light colored Lincoln sedan automobile in Kansas City, Missouri, with some men who drove away with him; that the insured has not been seen or heard of since that time; that Ruth, the insured's wife, was in Geary, Oklahoma, at the time and, hearing from her brother, she left Oklahoma at once for Kansas City, Missouri for the purpose of searching for the insured; that she searched everywhere for the insured and went to the head of a so-called "gangster's gang" in search of the insured and was told by the head gangster that the insured had "double-crossed" them and would never be seen again; that hearing this she returned home and died of a broken heart on October 5, 1930, due to worry over the fate of said insured; that federal detectives followed her body from Kansas City to the grave. It developed on cross-examination of the plaintiff that federal detectives in November, 1930, made inquiry of the plaintiff about the insured, but left no word as to why the inquiry was made. This was after she notified the insurance company of his disappearance.

George Carey, a brother of the insured, testified that he last heard of the insured in the month of May, 1930; that he had made inquiries from friends of the insured and was unable to obtain any information as to the whereabouts of the insured.

Mary Carey, a sister of the insured, testified to the same effect as her brother, George Carey, and stated that she had inquired among all of the friends of the insured and at his usual place of abode, but had failed

to locate him and had not heard from him since 1930.

At the conclusion of plaintiff's evidence, the substance of which we have set forth, plaintiff rested her case and, upon motion of the defendant, the trial judge made a finding in favor of defendant and gave his reasons for such finding, as follows: "From the evidence here this man, the insured, disappeared in June or the first of May, 1930 and letters are received from him until July 28, 1930 and finally later the evidence shows that federal agents are following the funeral of a lady with whom the insured was associated with. The federal agents are looking for him and he is not what would be considered under the law deceased within the seven year period. He is a fugitive from justice, if anything at all. The witness testified that the federal agents were following the funeral and that they were looking for this man and naturally when the federal agents are following any funeral the one sought for will never appear. The finding will be for the defendant."

We cannot agree with the reasoning and conclusions reached by the trial court as herein set forth.

In the case of *Piersol v. Massachusetts Mut. Life Ins. Co.*, 260 Ill. App. 578, at p. 587, the court said:

"An examination of the cases indicates that the prerequisites which would justify a presumption of death are (1) that the person whose death is in question has disappeared from his last known abode, domicile or residence; (2) that he has neither returned thereto nor communicated with those with whom he would naturally communicate if alive; (3) that inquiry has been made at the last known place of abode of the persons who would naturally hear from him without obtaining information indicating that he is alive. Out of proof of such material facts a presumption of death arises as a matter of law, but it is a rebuttable presumption which may be disproved by evidence of facts tending to show that the party presumed to be dead is alive. See Jones,

Commentaries on Evidence, 2nd ed., vol. 1, secs. 285-294; 8 R. C. L. pp. 708, 709, and see page 714." See also *Davis v. Metropolitan Life Ins. Co.*, 285 Ill. App. 398; *Tegtmeyer v. Tegtmeyer*, 348 Ill. 434; *Smith v. Lawley*, 149 Ill. App. 480.

The defendant contends that the plaintiff failed to prove the facts necessary to raise the legal presumption of death; that any evidence tending to show that the insured had been murdered is foreign to the issue in the case and it does not appear that the court acted arbitrarily and the finding for the defendant is not subject to review.

No authorities in this State have been cited showing that this court is without jurisdiction to review matters which have been heard by the trial court. Such a statement of the law is both new and novel and has not been the recognized practice in this State.

We are convinced that the proof in this case sustains the position of the plaintiff and that the legal presumption that the insured is dead, is justified.

For the reasons herein given the judgment of the municipal court is reversed and judgment is entered here for the sum of $1,500 and costs in favor of plaintiff and against the defendant.

*Judgment reversed and judgment here for plaintiff for $1,500 and costs.*

HEBEL and BURKE, JJ., concur.