Ruth P. Blodgett and Ralph K. Blodgett, Appellees, v. State Mutual Life Assurance Company of Worcester, Massachusetts, Appellant.

Gen. No. 11,479.

Second District, First Division.

September 19, 1961.

Bull, Ludens & Potter, of Morrison, for appellant.

Jacob Cantlin, and Donald E. Blodgett, both of Rock Falls, for appellee.

McNEAL, J.

The defendant, State Mutual Life Assurance Company of Worcester, Massachusetts, appeals from a judgment entered on its policies insuring the life of Richard K. Blodgett. Four of the policies were issued in 1938, two for $1000 each and two for $1100 each. A fifth policy for $1000 was issued in 1941. Blodgett disappeared in 1947. In 1959 the beneficiaries, Ruth P. Blodgett and Ralph K. Blodgett, wife and son of

the insured, filed their complaint to recover the amounts of the policies based upon the presumption of insured's death by reason of his absence for over seven years. The company admitted that the policies were in full force and effect and that insured had disappeared, but denied that he should be presumed dead, and alleged as affirmative defenses that insured's disappearance was reasonably explained by his embezzlement of large sums of money from friends and business associates. Plaintiffs denied these defenses and the cause was tried before the court without a jury. Plaintiffs recovered a judgment for $6047.46 and costs, and this appeal followed.

Appellant states that there are two issues on this appeal: (1) whether proof of insured's death was established by his absence for more than seven years; and (2) whether the court erred in refusing to require plaintiffs to furnish a bond indemnifying defendant for moneys paid to satisfy the judgment, in the event Blodgett is hereafter ascertained to be living.

At the time of his disappearance in January, 1947, Blodgett was 39 years of age and in good health. He lived with his wife and their children at Fulton, Illinois, and his mother and brother lived nearby. Blodgett's relations with the members of his family were excellent. He was in the insurance business. On January 9, 1947, he told his wife that he was going out of town on business, and drove away in his car. Since then he has not been seen by anyone who testified at the trial. Within a month after his disappearance, Blodgett was indicted for embezzlement. Members of his family testified that they made no special search for him because they assumed that the officers of the law were looking for him. His relatives have had no word from insured, except a post card bearing a Niagara Falls postmark and signed "Dad," which was received by his son, Ralph, in September, 1948.

Blodgett also held the position of Public Administrator of Whiteside County, and as such he was administrator of the estate of William Henry Fisher, deceased. On January 6, 1947, the county court ordered Blodgett to produce all of the assets of the estate in court on January 10. Blodgett did not appear, and never produced the assets, which amounted to $1015.32. This amount was paid to the estate by his brother, Harold Blodgett, who with his mother were sureties on his $4000 bond as Public Administrator. His mother had no money and Harold Blodgett was required to sell his home in order to account for their obligation as sureties on the bond.

Within a month prior to his disappearance Blodgett was entrusted to invest $10,000 by Clarence B. Pierce, conservator of the estate of John P. Thomson, an incompetent. Blodgett never invested the money, and Pierce was required to account for the $10,000 from his own funds.

As agent for Tennis Marcellus, Blodgett received $2500 from the purchaser of a building sold by Marcellus. Although repeated demands were made during the last week of 1946, Blodgett failed to remit $1959.74 of the amount received. Blodgett was charged with embezzlement and was indicted for this offense on February 4, 1947.

In May, 1946, the commissioners of the Meredosia Levee and Drainage District employed Blodgett to assist them in the management of the affairs of the district. He procured their signatures on a note for $3000, which he sold to C. S. Fowler. Judgment was entered on the note in favor of Fowler and against the commissioners for $3474.58. The commissioners paid the judgment, although they received no consideration from the sale of the note.

In 1944 Blodgett loaned $900 to Edna and Clyde Kelly. They gave him a note payable to bearer and secured by a trust deed on their real estate in Fulton.

Blodgett sold the note to C. S. Fowler for $800, but continued to accept payments from the Kellys and later released all interest as trustee in the premises to them. The Kellys sold and conveyed the property by warranty deed to Hettie B. Hill. Since the release was given before maturity of the note, Fowler collected $800 from Hettie B. Hill to settle his claim on the note and release his lien on the premises.

Boyd Kimmel has been sheriff of Whiteside County or connected with the sheriff's office since January, 1947. On January 23 he gave a complete description of Blodgett and the automobile he was driving when he left Fulton, to the Illinois State Police for broadcast over the police radio network. In May, 1948, the sheriff received a phone call from a woman in Michigan, who inquired concerning Blodgett and his family. Kimmel then sent the same information to the Michigan State Police. They were unable to locate Blodgett or the woman who had inquired about him. After Mrs. Blodgett and her children moved to Georgia, the sheriff contacted the chief of police there and asked him to search for Blodgett. Kimmel was called as a witness by plaintiffs and testified that he had never been able to locate Blodgett, although he had pursued all avenues of search. Edward Loftus, a deputy sheriff called on behalf of defendant, testified that he received similar inquiries concerning Blodgett by telephone in 1952 or 1953.

Both parties have referred to Kennedy v. Modern Woodmen of America, 243 Ill 560, 90 NE 1084, and Steen v. Modern Woodmen of America, 296 Ill 104, 129 NE 546. In the Kennedy case the Court held that the facts in support of the presumption of death need be proved only by a preponderance of the evidence; that a witness who testified that he saw the missing person during the seven-year period may be impeached; and that the credibility of such a witness is for the jury to determine. In the Steen case the Court upheld the validity of a by-law of a benefit society which post-

poned the presumption in disappearance cases until the expiration of the member's life expectancy according to standard mortality tables. At page 113 the Court said that "the rule in question is merely a rule of evidence," and "there is now no sound reason for continuing the rule except that it has existed for so long a time that convenience makes it the best rule to follow where no other rule is established by statute or by agreement."

In cases of this character when a suit is instituted to recover on an insurance policy and the beneficiary relies upon the presumption of the death of the insured by reason of his absence for seven years, it is always a matter of proper inquiry to investigate whether such person was in comfortable or disturbed circumstances, whether he was free from suspicion of guilt of any crime, whether he was a man of rectitude and of good esteem or one who was guilty of moral turpitude and subject to humiliation and disgrace. Gayton v. Equitable Life Assur. Soc. of United States, 245 Ill App 432, 438. An examination of the cases indicates that the prerequisites which would justify a presumption of death are (1) that the person whose death is in question has disappeared from his last known abode, domicile or residence; (2) that he has neither returned thereto nor communicated with those with whom he would naturally communicate, if alive, during the ensuing period of seven years; and (3) that inquiry has been made at the last known place of abode of the persons who would naturally hear from him without obtaining information that he is alive. Out of proof of such material facts a presumption of death arises as a matter of law, but it is a rebuttable presumption which may be disproved by evidence of facts tending to show that the party presumed to be dead is alive. Piersol v. Massachusetts Mut. Life Ins. Co., 260 Ill App 578, 587; Mueller v. Hancock Mut. Life Ins. Co., 280 Ill

160

App 519, 523; Carey v. Metropolitan Life Ins. Co., 305 Ill App 308, 312, 27 NE2d 634; McNaghten v. Northwestern Mut. Life Ins. Co., 318 Ill App 390, 400, 48 NE2d 200.

■ Although a shortage in an assured's accounts may explain his disappearance, it does not explain his continued absence for seven years, and the fact that his disappearance is explained does not overcome the presumption of death after his continued, unexplained absence for seven years. Mueller v. Hancock Mut. Life Ins. Co., 280 Ill App 519, 522. The fact that the absent person is a fugitive from justice is admissible in evidence, but it does not prevent the presumption of death from arising. Whitten v. Hancock Mut. Life Ins. Co., 281 Ill App 539, 542; Carey v. Metropolitan Life Ins. Co., 305 Ill App 308, 27 NE2d 634.

■ While the shortages in Blodgett's accounts and his indictment for embezzlement explain his disappearance, they do not overcome the presumption of death after his continued, unexplained absence for seven years. According to the decisions of the Appellate Court cited, plaintiffs' undisputed proof of the prerequisites which justify the presumption of death established such presumption as a matter of law, and such presumption could have been disproven only by evidence of facts tending to show that Blodgett was alive at the time of the trial. Inasmuch as the record discloses no evidence that insured is alive, defendant's suggestion that the judgment of the trial court is against the law and manifest weight of the evidence is not tenable.

■■ About a month after the cause was tried and taken under advisement and about a week after the trial judge indicated his decision in favor of plaintiffs, defendant moved for leave to amend its answer to include a prayer for a bond to reimburse defendant for any moneys paid in satisfaction of the judgment

161

in the event Blodgett may be ascertained to be living. The motion contains no showing that the proposed amendment would have been a proper one, and defendant refers to no statute or decision authorizing the court to require such a bond in this type of case. Under these circumstances, the allowance of the amendment was within the sound discretion of the trial court, and his refusal to allow the amendment was not prejudicial error unless such discretion was abused. Old Salem Chautauqua Ass'n v. Illinois Dist. Council of Assembly of God, 13 Ill2d 258, 266, 148 NE2d 777. There was no abuse of discretion in this case.

For the reasons stated it is our opinion that the trial court did not err in denying defendant's motion for leave to amend its answer and that its judgment on the merits was correct. Accordingly the judgment of the Circuit Court of Whiteside County is affirmed.

Affirmed.

SMITH, P. J. and DOVE, J., concur.