*In re* ESTATE OF E. W. MORRISON, Deceased.—(GAITHER COLLIER, Indiv. and as Adm'r of the Estate of E. W. Morrison, Petitioner-Appellee, *v.* EDWARD ROSEWELL, Cook County Treasurer, *et al.*, Respondents-Appellants—(E. W. MORRISON, Respondent).)

First District (3rd Division)    No. 80-1948

Opinion filed September 30, 1981.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Peter S. Coorlas, Steven Pearlman, and James Babowice, Assistant State's Attorneys, of counsel), for appellants.

Stuart M. Weis & Associates, Ltd., of Chicago (Marsha F. Weis, of counsel), for appellee.

Mr. JUSTICE WHITE delivered the opinion of the court:

Edward J. Rosewell, as county treasurer of Cook County, and the County of Cook by Bernard Carey, State's Attorney of Cook County, appeal from an order of the circuit court, probate division, finding E. W. Morrison to be presumed dead as of January 1, 1937, and granting letters of administration to Gaither Collier. The petition for letters of administration upon the presumption of death alleged that E. W. Morrison's last known residence was 145½ East Iowa, Memphis, Tennessee, where he lived in 1929; that attempts were made to locate him there; that diligent inquiry had been made at his last known address and elsewhere without obtaining information indicating that he was alive; that since 1929 Morrison has not communicated with those with whom he would naturally communicate, if alive; and that he has not been seen or heard from since that time. The petition further alleged that E. W. Morrison inherited a share of the estate of one Nettie Stevenson who died on February 19, 1971.

Stevenson left an estate which included a parcel of real estate and some cash. The cash Morrison was entitled to receive was deposited with the treasurer of Cook County "for the use and benefit of E. W. Morrison," where it remains. The title to the real estate vested by operation of law in Morrison.

Appellants Rosewell and the County of Cook contend that the evidence presented to the trial court was insufficient to give rise to a presumption of death. Appellee's evidence in the trial court consisted of the testimony of two witnesses, Gaither Collier and Leo Armstrong. Gaither Collier's testimony follows. E. W. Morrison was the uncle of her deceased husband, Warner Collier, and more specifically, her husband's mother's brother. Warner and Gaither were married on February 29, 1932, and she had known Warner approximately six or seven years before they were married. Warner died on August 2, 1972. To the best of the witness' knowledge, Morrison's only living relatives at the time of the marriage were her husband, a nephew; Adelia Bland, a sister; and Nettie Stevenson, Adelia's daughter.

Gaither Collier only met with Morrison twice, and both meetings occurred in 1929. The first meeting was in the town where she lived, Earle, Arkansas. The second meeting occurred in June or July of 1929 at Morrison's residence at 145½ East Iowa in Memphis, Tennessee. Memphis, Tennessee, is approximately 30 miles from Earle, Arkansas. She and Warner parked in front of his home, and Morrison came out and spoke with them. They did not enter the house. Morrison appeared to be ill, and when asked about his health, he said he had been ill. At the end of the day Gaither returned to her home. She never saw Morrison after this meeting.

Morrison never communicated with Gaither Collier subsequent to this last meeting, and she never tried to communicate with him after that time. Furthermore, she never saw or heard her husband communicate with Morrison after the second meeting. After that time, she never saw her husband write a letter to Morrison, and she never saw any letters from Morrison addressed to her husband. According to Gaither's knowledge, Morrison never married and never had any children, natural or adopted.

Furthermore, to the best of Gaither Collier's knowledge, neither Adelia Bland nor Nettie Stevenson heard from Morrison or anything about him after 1929. Gaither and Warner Collier had lived in Chicago in the same apartment as Nettie Stevenson from 1935 or 1936, until Stevenson's death. Adelia Bland had lived in Earle, but she came to Chicago in 1946 or 1947 and resided with the Colliers and her daughter, Nettie. During the time Gaither resided with Bland and Stevenson, she never saw any letters from Morrison addressed to either of them come into the home, and she never heard a telephone conversation between either of them and Morrison. Morrison never came to visit at the apartment in Chicago, and neither Stevenson nor Bland ever spoke of taking a trip to visit Morrison.

Gaither Collier also testified that, as far as she knew, the first time after 1929 that her husband tried to locate Morrison was in 1972. Stevenson had died, and her estate was in question. According to Gaither, Warner then made a trip to Memphis with one Leo Armstrong. Gaither did not go with them.

Gaither herself made attempts to locate Morrison in 1973. First, she asked her niece, Perlie Mae Gillum, who lived in Memphis, to go to the courthouse in Memphis to inquire about Morrison. Gillum subsequently informed Gaither that she was unable to obtain any information about Morrison. Gaither also wrote a letter addressed to the City of Memphis. In reply, she received a letter from Rev. Chester L. Berryhill, Jr., of the Memphis Community Relations Commission. This letter stated that all efforts to locate Morrison were unsuccessful, and that the Memphis Housing Authority, local radio stations and the Social Security office had

been contacted. The Social Security office refused to reveal information because of confidentiality laws.

On cross-examination, Gaither Collier testified that she did not know how long Morrison had lived at the above-mentioned address in Memphis. She also testified that she made several trips to Memphis in 1931 and 1932, but did not attempt to visit Morrison. After her marriage in 1932 to Warner Collier, she continued to make trips to Memphis, usually accompanied by Warner; however, she never went to Morrison's home with her husband, except for the 1929 visit in front of Morrison's home. According to Gaither, Morrison was approximately 28 or 29 years old in 1929.

Leo Armstrong testified that he had been a friend of Warner Collier since childhood and that he had never met Morrison. In May or June of 1972, he traveled with Warner to Memphis. The sole purpose of the trip was to search for Morrison. Upon arrival, they first looked for a building address on East Iowa Street where Warner said that Morrison had lived. They found a vacant lot. There was no building at that location. Then they went to the house of John Thomas, a mutual friend. Thomas suggested that they make an announcement on a radio station. They took his suggestion, and later that afternoon Armstrong heard an announcement which asked listeners with any information about Morrison to call the radio station or Thomas at numbers which were announced. The radio station never contacted any of them. Thomas later informed Armstrong that he had not received any response from the announcement. Armstrong could not remember the name of the radio station.

While in Memphis, Armstrong, Thomas and Warner Collier also went to the Goldcrest Brewery, where Morrison was supposed to have been employed. The brewery had burned down. Then they went to a cafe located approximately two blocks from the brewery. Thomas and Warner asked a few questions of two or three people at this cafe, but they were unable to obtain any information about Morrison.

On cross-examination, Armstrong testified that he did not know over what period of time the radio station broadcast the announcement and that he did not know how many times it was broadcast per day. Armstrong also stated that he and Warner were in Memphis for between five and seven days, and that he only heard the announcement once. Armstrong did not attempt to contact the former owners of the brewery regarding employment records. Further, no hospital in the vicinity of Morrison's residence was contacted. On redirect, Armstrong was permitted to testify that Warner had told him that he had contacted the Missing Person's Bureau, the Social Security office and the police department. No information was obtained as a result of these inquiries.

Appellants presented no evidence at the hearing. In concluding that

there was sufficient evidence to establish a presumption of death, the trial court stated that relatives who probably would have heard from Morrison, if he was alive, had not heard from him since 1929. The sole question presented for review is whether the evidence was sufficient to raise a presumption of death after seven years absence.

■■ In Illinois, the prerequisites for a presumption of death after seven years of continuous absence are well settled. First, the person must have disappeared from his last known abode, domicile or residence. Secondly, he must have neither returned thereto nor communicated with those with whom he would naturally communicate, if alive, during the ensuing period of seven years. Thirdly, diligent inquiry must have been made at his last known place of abode of the persons who would naturally hear from him without obtaining information indicating that he is alive. If these prerequisites are proved, a rebuttable presumption of death arises which may be disproved by evidence that the party presumed to be dead is alive. (*Presbyterian Church of Carlyle v. St. Louis Union Trust Co.* (1974), 18 Ill. App. 3d 713, 720, 310 N.E.2d 412; *Blodgett v. State Mutual Life Assurance Co.* (1961), 32 Ill. App. 2d 155, 160, 177 N.E.2d 1; *McNaghten v. Northwestern Mutual Life Insurance Co.* (1943), 318 Ill. App. 390, 400, 48 N.E.2d 200; *Carey v. Metropolitan Life Insurance Co.* (1940), 305 Ill. App. 308, 312, 27 N.E.2d 634; *Mueller v. John Hancock Mutual Life Insurance Co.* (1935), 280 Ill. App. 519, 523; *Piersol v. Massachusetts Mutual Life Insurance Co.* (1931), 260 Ill. App. 578, 587.) This presumption of death is not conclusive, and the law cannot deprive an absentee of his estate if he is alive. *Eddy v. Eddy* (1922), 302 Ill. 446, 453, 134 N.E. 801; *Smith v. Harness* (1943), 321 Ill. App. 22, 27, 52 N.E.2d 280.

■■ The presumption of death need only be established by a preponderance of the evidence. (*Kennedy v. Modern Woodmen of America* (1910), 243 Ill. 560, 575, 90 N.E. 1084; *Blodgett*, 32 Ill. App. 2d 155, 159.) However, a judgment of the trial court will be set aside if it is contrary to the manifest weight of the evidence. (*Blodgett*, 32 Ill. App. 2d 155, 161; *McNaghten*, 318 Ill. App. 390, 400; *Mueller*, 280 Ill. App. 519, 523; *Policemen's Benevolent Association v. Ryce* (1904), 115 Ill. App. 95, 98, aff'd (1904), 213 Ill. 9.) We conclude that the judgment of the trial court in the instant case was against the manifest weight of the evidence, because the evidence was clearly insufficient to establish the prerequisites for a presumption of death after seven years absence.

The deficiency of petitioner-appellee's proof permeates all three prerequisites.

A presumption of death after seven years absence will not arise from long absence alone. Before the presumption can be raised, an absence of

seven years or more from the established residence of the absentee must be shown. (*Hitz v. Ahlgren* (1897), 170 Ill. 60, 64, 48 N.E. 1068.) That court stated:

> "We hold, therefore, that mere absence of a person from a place where his relatives reside, but which is not his own residence, and mere failure on the part of his relatives to receive letters from him for a period of seven years, are not of themselves sufficient to raise a presumption of death. The absence must be from his usual place of abode or resort." 170 Ill. 60, 64.

■■ Thus, appellee's evidence must establish that Morrison disappeared from his last known abode, domicile or residence. Her evidence, however, fails to show a disappearance which would support the trial court's finding that Morrison is presumed dead as of January 1, 1937. The evidence established that Morrison resided at a certain address in Memphis, Tennessee, in 1929 when he was visited by Warner and Gaither Collier. There is no evidence as to when thereafter he left. There is no evidence that he did not continue to live at this address up until and even after the time he was declared presumed dead by the trial court. When Warner Collier and Armstrong searched for Morrison in 1972, they found a vacant lot at this address. His mere absence from that address at that time cannot justify a presumption of death.

■■ Moreover, even if we were to conclude that the evidence was sufficient to establish a disappearance by Morrison, we are of the opinion that appellee has failed to establish the second prerequisite of the presumption, that Morrison neither returned nor communicated with those with whom he would naturally communicate, if alive, during the ensuing period of seven years. The evidence establishes that Gaither and Warner Collier saw Morrison twice in 1929; but no practice, habit, custom, basis or reason for communication between Morrison and either Adelia Bland, Nettie Stevenson, Warner Collier or Gaither Collier was shown, although Morrison was related to the first three by blood and the last by marriage. Furthermore, the evidence does not show that Morrison had any other contacts with these relatives prior to 1929. Appellee failed to meet her burden of showing that these individuals were the people with whom Morrison would have been likely to communicate if he was alive. As one court has stated: "It is a common occurrence that communications between parties who never have occasion to see one another, and whose interests become increasingly dissimilar, dwindles [*sic*] and eventually terminates [*sic*] by mutual neglect." *In re Estate of Holmlund* (1962), 232 Or. 49, 64, 374 P.2d 393, 400.

■■ Finally, the last prerequisite is that there be evidence of diligent inquiry at the absentee's last place of residence, and among his relatives and any others who probably would have heard from him, if living. (*Hitz*,

170 Ill. 60, 63-64.) Under Illinois law, "[p]roof of such inquiry made both before and after the expiration of seven years of absence may be made, and proof of further inquiry made thereafter is not improper." (*McNaghten*, 318 Ill. App. 390, 399; but see Annot., 99 A.L.R.2d 307, 324-25 (1965).) Obviously the time of a search for a missing person would greatly affect its probative value in presuming that the person is dead. In the instant case no search and inquiry was made for Morrison within seven years of his purported disappearance in 1929. We have grave doubts as to the sufficiency of the inquiry in the instant case, which was conducted some 43 years after the purported disappearance. We, however, express no opinion as to the adequacy of the inquiry, because we conclude that the other prerequisites for a presumption of death have not been satisfied.

Accordingly, the trial court's order issuing letters of administration upon the presumption of death to appellee is reversed.

Reversed.

McNAMARA and McGILLICUDDY, JJ., concur.