(No. 33293.—

McDONOUGH COUNTY ORPHANAGE et al., Appellees, vs. SARAH BURNHART, Trustee, et al.—(IDA RUDDY et al., Appellants.)

*Opinion filed March 24, 1955.*

T. MAC DOWNING, of Macomb, (GEORGE TRAICOFF, of Peoria, of counsel,) for appellants Ida Ruddy *et al.;* GUMBART, GRIGSBY & GUMBART, of Macomb, for appellants Elmer T. Walker *et al.;* and HARRIS & HARRIS, of Macomb, for appellant Young Men's Christian Association.

LATHAM CASTLE, Attorney General, of Springfield, (JOHN L. DAVIDSON, JR., GEORGE W. McGURN, J. CALVIN BOSTIAN, and MARK O. ROBERTS, of counsel,) for appellee Attorney General; and KEITH F. SCOTT, of Macomb, for appellee The Salvation Army.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This is a direct appeal by three intervening petitioners from a decree of the circuit court of McDonough County in a proceeding filed by the McDonough County Orphanage, a corporation, hereinafter called the Orphanage, to dissolve and distribute its assets pursuant to sections 54 and 55 of the "Act to revise the law relating to Corporations not for pecuniary profit" approved July 17, 1943. (Ill. Rev. Stat. 1953, chap. 32, par. 163a53, 163a54.) A part of the assets in controversy is real estate, thus a freehold is involved.

The complaint alleges that the Orphanage was organized in 1912 as a charitable corporation to care for, educate

and place in good homes dependent children of McDonough County and later elected to adopt the provisions of the cited statute; that since 1950, it has had no children in the home under its supervision and that its assets are subject to waste by continuing operations and prays dissolution and distribution of its assets by the court under the aforesaid statute. Its assets are alleged to be cash, bonds, real estate and a vested interest in certain real estate and personal property as provided in the eighth clause of the will of Hannah F. Wright held in trust by Sarah Burnhart during the lifetime of Albanah R. Van Osdell as construed by the circuit court of McDonough County by decree entered on June 10, 1938.

Sarah Burnhart, as trustee under the last will and testament of Hannah F. Wright, deceased, Albanah R. Van Osdell, Ivan A. Elliott, as Attorney General for the State of Illinois, Salvation Army, Macomb Corps, and others not necessary to notice, were made parties defendant and filed answers. In addition to the defendants originally named, the court permitted Ida Ruddy and other named persons who are some of the heirs of Hannah F. Wright, deceased, the other heirs being unknown, to intervene on behalf of all the heirs of Hannah F. Wright; they made claim to the real and personal property passing under the eighth clause of the will of Hannah F. Wright, deceased, which the Orphanage claimed as assets subject to distribution. The court also permitted The Salvation Army, an Illinois corporation, Elmer T. Walker, Ralph B. Purdum, and Nelle Simpson (Parsons), as trustees under the last will and testament of Rebecca E. Everly, hereinafter called the Everly Trustees, and Young Men's Christian Association of Macomb, Illinois, hereinafter called the Association, and other charitable and municipal bodies not necessary to notice, to intervene. Each intervenor alleged that it was engaged in charitable activities substantially similar to those of the Orphanage and prayed that

upon dissolution, the assets of the Orphanage be turned over to it.

No controverted question arose as to the right of the Orphanage to dissolve, and a decree was entered on November 5, 1952, dissolving the Orphanage, appointing a receiver, and reserving for future decision the determination of the assets of the Orphanage and the distribution of the same.

After hearings on the reserved questions, the court denied the right of the Wright heirs to the property claimed by the Orphanage under the eighth clause of the will of Hannah F. Wright, deceased, denied the right of the Association, the Everly Trustees, and all other claimants except the Salvation Army to participate in the distribution of the assets of the Orphanage, decreed that the property passing under the eight clause of the will of Hannah F. Wright, deceased, vested in and was an asset of the Orphanage, subject to the trust outstanding during the life of Albanah R. Van Osdell, and finally set over and vested in the intervening petitioner, Salvation Army, a corporation, all the assets of the Orphanage, conditioned that such assets as are hereafter received from the trustee under the eighth clause of the Hannah F. Wright will be devoted to caring for, educating and placing in good homes dependent children of McDonough County and that it keep records as required by the Wright will.

From this decree, the Wright heirs, the Association, and the Everly Trustees, have perfected an appeal, but each appellant has filed a separate brief. The Wright heirs limit their attack to that portion of the decree denying their claim to the property involved in the eighth clause of the Hannah F. Wright will; the other appellants limit their attack to that portion of the decree denying their claim to the Orphanage assets and giving them to the Salvation Army. The Attorney General and The Salvation Army have appeared as appellees and filed separate

briefs in support of the decree. The Salvation Army has also assigned cross error claiming that the court erred in restricting its use of the property to be received under the Wright will to the purposes provided in the Orphanage charter.

There is no serious dispute in the evidence. The Orphanage was organized in 1912 as a corporation under "An Act Concerning Corporations" approved April 18, 1872, and all acts amendatory thereof, for the purpose of "caring for, educating and placing in good homes dependent children of the county." Subsequently, the Orphanage elected to accept the provision of "An Act to revise the law relating to Corporations not for pecuniary profit" approved July 17, 1943. (Ill. Rev. Stat. 1953, chap. 32, par. 163a-163a100.) The Orphanage was sustained by voluntary contributions from individuals, societies, churches, the county and bequests. From its inception, the Orphanage was actively engaged in carrying out its corporate powers until May 20, 1952, when it filed in the circuit court a petition for dissolution under the aforesaid statute. During the last few years prior to its dissolution, its operating costs had been increasing while the use made of its facilities was decreasing. One of the principal factors responsible for the diminished use of the home was the government aid recently available for dependent children. In order to reduce operating costs, the Orphanage leased its home to the Salvation Army, Macomb Corps, in 1950, but in spite of the saving effected, the *per capita* cost of the few children cared for was too high, and the decision was made to dissolve to prevent further waste of its assets. The conclusion is inescapable that at the present time there is no need to maintain a home to house dependent children.

Among the assets claimed by the Orphanage was an interest in a trust created by the will of Hannah F. Wright. Mrs. Wright had executed her will in 1933. After her death, in 1937, her will was probated in McDonough

County and administration had. The controversy here arises under the eighth clause of the will which provides:

"EIGHTH: All the rest, residue and remainder of my property, whether real, personal or mixed and wherever the same may be situated and over which I may have any testamentary control whatsoever at the time of my death, I give, devise and bequeath, in trust, to Sarah Burnhart, of Adair, Illinois, for the following uses and purposes, viz:— I direct that my said Trustee shall invest the same in such securities as may in her judgment be best fitted for the purpose and under the direction of a Court of competent jurisdiction and from the income of said Trust Estate, she shall pay to my said niece, Albanah R. Van Osdell the sum of One Hundred Dollars ($100.00) per month during her natural life, provided the income from said Trust Fund shall be sufficient to make such payments. Should the income from such Trust Fund be insufficient to make such payments, then it is my will that all of said income shall be paid by my said Trustee to the said Albanah R. Van Osdell in equal monthly installments for and during the term of her natural life as above set out. Should said income from my said Trust Estate be more than sufficient to pay to said beneficiary the sum of One Hundred Dollars ($100.00) per month, then such excess shall be added to the principal of said Trust Estate during the lifetime of the said beneficiary. At the death of the said Albanah R. Van Osdell, I give, devise and bequeath all of the rest, residue and remainder of said Trust Fund so remaining in the hands of my said Trustee or her successor in Trust to the McDonough County Orphanage of the City of Macomb in the County of McDonough and State of Illinois, and to the proper officers of said institution to be used by them for the benefit of said institution as they may deem best. This bequest is also made by me in memory of my beloved husband, William Wright, who was a former resident of McDonough County, Illinois, and I direct that the books of said Orphanage shall carry the proper entries and notations showing the purposes of this gift."

Sarah Burnhart qualified as trustee under said will and has since administered said trust under the directions of the circuit court of McDonough County for the benefit of Albanah R. Van Osdell, who is still living. At no time has the income from the trust been sufficient to pay the life beneficiary the maximum of $100 a month as provided in the will.

It appears from the evidence that appellant Young

Men's Christian Association was organized as a nonprofit corporation in Macomb in 1889 for the physical, social, intellectual and spiritual improvement of young men, being sustained by gifts from the community chest and voluntary contributions. It has most adequately fulfilled its corporate powers furnishing recreational and athletic activities for all younger age groups, regardless of race or creed, and has apparently expanded its activities to include girls of all age groups. It endeavors to develop Christian character but holds no religious meetings. It maintains no facilities to care for or house dependent children, and its previous history does not indicate that its personnel are peculiarly well fitted by training or experience to handle the many problems that arise with dependent children.

As to the appellants the Everly Trustees, the evidence shows that they are administering a trust created by the will of Rebecca E. Everly wherein she left her residuary estate to said trustees to construct in or near Macomb and maintain a home for worthy aged people of McDonough County under rules to be made by the trustees admitting only aged people of good moral character and honorable reputation, requiring those who were able to pay for their keep to do so. The Everly Trustees in fulfillment of their powers are building a home where they can care for forty-one people when fully completed, but at the present, the income from the trust is not sufficient to permit the home to operate at full capacity with charity patients. No provision is made for the care of the children.

The Salvation Army was incorporated in Illinois on May 29, 1913, under "An Act Concerning Corporations" approved April 18, 1872, as amended, but not for pecuniary profit. It would extend this opinion too much to quote the charter at length, but it will suffice to say that its object is to further the work of the Christian church known as the Salvation Army, to engage in charitable, educational and religious work, and to do everything necessary

or incidental to such charitable, educational and religious work; to take by gift, purchase, or grant any property for the objects of said corporation. Its operations are Statewide.

The office of the corporation is located in Chicago but it has for many years maintained a church building in Macomb with a corps officer in charge known as the Salvation Army, Macomb Corps. A local advisory board made up of about fifteen residents of the county counsel with the local corps officer to determine ways in which the Salvation Army can assist locally. It is sustained by gifts from the Macomb Community Chest, individual contributions throughout the county, and from the sale of its magazine *War Cry*. Its policy has been to apply local donations to local charitable purposes. Locally, it holds religious services, distributes Christmas baskets to needy families, co-operates with both the boy and girl scout organizations, holds band and study classes, and provides children with camping experience. The local corps took over the Orphanage home in 1950 and did care for such children as were brought them thereafter, receiving from the Orphanage $150 per month for the maintenance of the building and reimbursement for the food and clothing furnished any children kept.

The first phase of the appeal relates to the contention. of the Wright heirs that the property included in the eighth clause of the Wright will, presently held in trust during the life of Albanah R. Van Osdell, reverts to them and is not subject to distribution by the court as assets of the Orphanage under section 55 of the statute above cited. This contention is opposed in the briefs filed by the other appellants and by the appellees.

The basic problem presented is to construe the Hannah Wright will. The Wright heirs contend that there is no language in the Wright will indicating a general charitable intent without which, it is argued, the court cannot invoke its inherent equity powers or the *cy pres* doctrine to apply the Wright property to other charitable purposes. While

the trial court found a general charitable intent expressed in the Wright will, in our view of this case such finding was unnecessary and is in no way determinative of this cause, and we shall therefore assume, without deciding, as the Wright heirs contend, (1) that no general charitable intent is expressed in the will, and (2) that in line with the previously decided cases, the court could not, through use of its inherent equity powers or application of the *cy pres* doctrine, apply the property to similar charitable purposes.

The next contention, which is related to the premise we have assumed, is that since the gift was to the Orphanage by name only with no general charitable intention having been expressed, that the intention of the testatrix was to benefit only the Orphanage, which intention cannot be carried out because of its dissolution prior to the time when it will receive possession of the gift. This, it is argued, results in a failure of the gift to the Orphanage and a reversion to the Wright heirs because the gift to the Orphanage in the Wright will is either, (1) contingent upon the Orphanage being in existence when it receives possession of the gift, or (2) if vested, subject to divest by its dissolution before receiving possession. We must look to the will for the answer to these questions.

In construing a will, the intention of the testator controls and if his intention can be ascertained from the words used, this intention will be carried into effect unless contrary to public policy or some fixed rule of law. (*LeSourd* v. *Leinweber,* 412 Ill. 100.) It is the intention expressed, and not that which is presumed to have been in his mind, which is controlling. (*Davidson* v. *Davidson,* 2 Ill. 2d 197.) In the absence of a clear expression of intention by the testator, rules of construction, which in many instances are arbitrary, may be used in construing a will. If the use of rules as to presumed intention so twist and warp the evident meaning of a will as to render it ambiguous,

where the words in their ordinary sense are plain and the meaning clear, rules of construction are to be disregarded. *Storkan* v. *Ziska,* 406 Ill. 259.

Under the eighth clause of the will, the residuary estate was vested in a trustee to hold during the life of Albanah R. Van Osdell for the purpose of paying her the income, but not to exceed $100 per month, and at her death the trust estate, including any accrued income over that provided for the life beneficiary, was devised and bequeathed to the Orphanage. In making the bequest to the Orphanage "and to the proper officers of said institution" the testatrix did not intend to make a joint gift to the corporation and its officers, but rather it is a recognition of the fact that the corporation can only act through its officers. Likewise, in requiring the bequest "to be used by them for the benefit of said institution as they may deem best," the testatrix has only stated what the law implies, namely, that the corporation must use the property for corporate purposes. There is no contingency attached to the bequest to the Orphanage that it survive or continue its corporate existence until after the life beneficiary's death; there is no provision that the Orphanage should have the property only as long as it used the property for the benefit of the orphans; there is no divesting clause or condition attached which would terminate the bequest to the Orphanage.

This will gave the property absolutely to the Orphanage and not as a trust or endowment, thus it would have the right to use the principal and income for its corporate purposes as it saw fit. It may be well to consider other incidents attached to this equitable remainder prior to the death of the life beneficiary. The remainder being vested, even though it was equitable, could have been assigned or sold and converted to cash at any time after the testator's death. *Victor* v. *Hillebrecht,* 405 Ill. 264, 65 C.J. 546, Trusts, sec. 303.

The Wright heirs in developing their argument say that the gift to the Orphanage by name only indicates the testator's intention to benefit only the Orphanage as a going concern. It should be observed that the same argument would apply with equal force to a vested remainder to an individual by name only, but survival *per se* is not a test of vesting or divesting in case of an individual. Appellants cite *Quimby* v. *Quimby,* 175 Ill. App. 367, *Chicago Daily News Fresh Air Fund* v. *Kerner,* 305 Ill. App. 237, and *First National Bank of Chicago* v. *Elliott,* 406 Ill. 44, in support of their position. These cases are not in point as the failure of the gifts to the charitable organizations was not in issue in any of the cases. In the *Quimby case,* the named charity, which had a shifting executory interest under the will, had gone out of existence before its interest vested. In the other two cases, the named charity had renounced the bequest. In each of the cases the issue was whether the will contained language showing a general charitable intention which would enable the court to apply the bequest *cy pres* to some similar charitable purpose. It is said in the course of these opinions that a gift to a charity by name only evidences an intention to benefit only the named charity, but this statement is made in answer to the argument that a gift to a charity by name only indicates a general charitable intention to devote the gift to purposes for which the charity is organized. Furthermore, it is an intention that the court has presumed as it was not expressed by the donors. These cases are not helpful in determining whether the gift to the Orphanage is vested or contingent, as we are concerned with the intention expressed by the testatrix in her will.

Appellants also argue that under the doctrine of *Mott* v. *Danville Seminary,* 129 Ill. 403, which would have been applicable in 1937 when the testatrix died, the intention of the testatrix was that the property revert upon dissolution of the charitable corporation. The doctrine an-

nounced in the *Mott case* is that where property has been donated by an absolute transfer to a charitable corporation, upon dissolution such donated property which has not been alienated will revert to the donor. We are in accord with this statement of the law, but not with the conclusion that this shows the intention of the testatrix that the property revert when dissolution occurs. Prior to 1943, upon dissolution of a charitable corporation there was no statutory provision for the disposition of its assets. It was not uncommon in transferring property, particularly real estate, to charities to provide for its use of the property so long as it continued its charitable purposes, or conditioned to terminate or subject to forfeiture, if diverted from such use. Upon failure of that use, the property reverted to the donor in accordance with his expressed intention. The doctrine of the *Mott case,* however, was different; it applied when there was an absolute transfer to the charity without any reverter clause or conditional limitation. In other words, it applied in the absence of an expressed intention, and only to property which, because of the absence of any restrictive language in the conveyance, it had the power to alienate thereby destroying the reverter to the donor. In such cases courts had no successor to whom the property could be delivered. It had two choices: to allow the property to escheat or to revert to the donors. It may be said that the court allowed the property to revert because it presumed the donor would have so intended, but in fact, it is the absence of an expressed intention in the conveyance that brings the doctrine into play. The law as announced by the court has created the reverter. Thus the property reverted by operation of law and not because of any intention expressed by the donor. We cannot agree with appellants that the doctrine of the *Mott case* can be used to supply for the testatrix an intention that the property revert because of dissolution of the Orphanage before the bequest vests in possession.

In support of the contention that the bequest, if vested, is divested by the dissolution of the Orphanage, appellants cite *Miller* v. *Riddle*, 227 Ill. 53. That case involved a vested gift in the form of an endowment to a voluntary religious society which was in existence at the death of the testator, but which was abandoned and treated the same as dissolved, when it was to vest in possession. The court declared the property had reverted to the heirs. That case is but an application of the doctrine of the *Mott case.*

No constitutional question is raised, but appellants argue that the General Not for Profit Corporation Act adopted in 1943 after the testatrix died cannot affect her intention as expressed in her will. We agree that the statute cannot be used for such a purpose, nor is it being so used. As heretofore said, the intention of the testatrix is to be determined by the wording of her will. When we have construed the words which she used, we have fully carried out her will and the intention expressed therein. It is of no moment that in 1942, before the statute was adopted, the property would have reverted to the heirs had the Orphanage then dissolved. The right of reverter existing by operation of law, and not because the testator had provided for it, could be destroyed. *Prall* v. *Burckhartt*, 299 Ill. 19.

When the person who is to succeed to an estate in remainder is in being and ascertained, and the event which by express limitation will terminate the preceding estate is certain to happen, the remainder is vested. (*Barker* v. *Walker*, 403 Ill. 302.) Postponement of the enjoyment of an estate does not affect the vesting of the estate if the postponement is for the purpose of letting in some prior estate and not for reasons personal to the remainderman. (*Kost* v. *Foster*, 406 Ill. 565.) We cannot twist and distort the plain language of the testatrix in the manner suggested by appellants so as to supply contingencies or conditions which she has not expressed. In accordance with

the intention of the testatrix, as expressed in her will, we hold that at her death there was vested in the Orphanage an equitable remainder, vested in interest with possession only postponed until the death of the life beneficiary.

We turn now to the questions raised by the Wright heirs as to the construction of section 55 of the General Not for Profit Corporation Act. Section 55 of said act provides for the distribution of its assets and the order in which such payment shall be made. Paragraph (a) thereof provides for the payment of costs and expenses of the proceedings of dissolution and all outstanding obligations of the corporation. Paragraph (b) provides that assets held by the corporation upon condition requiring return, transfer, or conveyance, which condition occurs by reason of the dissolution or liquidation shall be returned, transferred or conveyed in accordance with such requirements. Paragraph (c) provides that assets held for charitable uses but not held upon condition requiring return, transfer, or conveyance by reason of dissolution shall be transferred to one or more domestic or foreign corporation, societies or organizations engaged in activities substantially similar to those of the dissolving corporation in accordance with a plan adopted by the directors, or in the absence of such a plan, to one or more domestic or foreign corporations, societies or organizations engaged in activities substantially similar to those of the dissolving corporation as the court may direct. Paragraph (d) provides that distribution of assets of the dissolving corporation either to members or others shall be controlled by the articles of incorporation or the bylaws as far as applicable. Paragraph (e) provides that any remaining assets shall be distributed to the persons, societies, organizations, corporations, domestic or foreign, whether organized for profit or not as may be set forth in a plan of distribution or, if no plan is adopted, as the court may direct. We are here concerned primarily with paragraphs (b) and (c).

The Wright heirs contend that under section 55(b) and (c) that the present interest of the Orphanage in the property under the Wright will is not "assets held;" and secondly, that the "condition requiring return" need not be an express condition but may be one implied by the law at the time the gift became effective. The word "asset" is defined as something of value. (Webster's New International Dictionary, 2d ed.) The interest of the Orphanage being a vested equitable remainder, as we have heretofore held, which could be sold and converted to cash, it is necessarily valuable. The word has no primary or technical legal meaning so its meaning must be determined by the connection in which it is used. (*Chicago Home for Girls* v. *Carr*, 300 Ill. 478.) The words "held by" were construed to mean "owned by" in the case of *People ex rel. Huck* v. *Graceland Cemetery Co.* 86 Ill. 336. The law recognizes both legal and equitable ownership. We see no reason why a vested equitable remainder is not an asset held by the Orphanage to be included in its assets for distribution on its dissolution, (*Community Unit School District No. 4* v. *Booth,* 1 Ill. 2d 545,) and we hold that it is.

The second contention relates to the construction of the word "condition" in paragraphs (b) and (c). The Wright heirs contend that since the language of the statute does not require an express condition an implied condition is sufficient to require return to the donor of charitable assets. The implied condition relied upon by appellants is the possibility of reverter which remained in the donor at common law under the doctrine of *Mott* v. *Danville Seminary,* 129 Ill. 403. Paragraphs (b) and (c) apply only to assets held for charitable use and divide such assets into two classes, namely, those held on condition requiring return and those not held on condition requiring return. As to assets held on condition, they are to be returned "in accordance with such requirements." This clearly indicates

that the condition is to be something expressed in the instrument of conveyance rather than some presumed intention that the ingenuity of an astute legal mind has conceived. The intention of the legislature, we believe, was to do away with the doctrine of the *Mott case,* which, as we have heretofore said, applied only when the testator had not expressed an intention, and require a return to the donor only when an express condition requires such return.

In the separate briefs of the appellants, the Association and Everly Trustees, each contends that the assets of the Orphanage should have been turned over to it as its functions were substantially similar to those of the Orphanage and more nearly so than any other claimant, and that the court erred in transferring the assets to the Salvation Army.

At the outset, we are confronted by the Attorney General's contention that the Association and the Everly Trustees are volunteers having no legally enforcible right in the assets and thus no appealable interest because their interests are no different from those of the general public represented by the Attorney General. This question has never been passed upon by this court. There are persuasive arguments in support of the Attorney General's position, which is supported by the case of *Bolster* v. *Attorney General,* 306 Mass. 287, 28 N.E. 2d 475. However, we are satisfied with the trial court's decision, and since we have considered the briefs of these appellants, we shall decide the case upon its merits and refrain from passing on this contention.

The Everly Trustees contend that the trial court erred or abused its discretion in giving the assets donated for local dependent children to a Statewide religious corporation which does not locally provide homes for the needy; it is further argued that the statute codifies the doctrine of judicial *cy pres* under which the court in transferring

the Wright assets is not empowered to impose restrictions on the use thereof by requiring the Salvation Army to hold these assets for the use of dependent children of McDonough County. There can be no question but that the assets of the Orphanage, except those held under the Matilda Bowen will which are not involved in this appeal, are assets held for charitable use, but not held upon condition requiring return by reason of dissolution, and are therefore distributable under section 55(c). Under section 55(c) the court, in distributing the assets, is required to transfer or convey them "to one or more domestic or foreign corporations, societies, or organizations engaged in activities substantially similar to those of the dissolving corporation as the court may direct." The legislature, aware of the fact that charitable organizations rarely, if ever, are organized to perform identical functions, and that their functions may overlap in varying degrees, has vested a broad discretion in the court in selecting a successor to the dissolving corporation's assets held for charitable uses. It is unnecessary to determine whether the *cy pres* doctrine would have permitted the imposition of restrictions on the use of the assets, as the legislature has given this power to the court by providing for the transfer "as the court may direct," which necessarily implies a power in the court to impose restrictions or attach conditions to the transfer.

In selecting the recipient of the assets of a charitable corporation, the court must look to the charter powers of, and the activities conducted by, the dissolving corporation for a standard by which the qualifications of the recipients are to be judged. The standard established is statutory and is not hampered by any limitations imposed on the applicability of the *cy pres* doctrine. The dominant purpose of the dissolving corporation must be carried out within the limits of practical expediency. The court in the discharge of its duties is acting as a court of equity with

the usual powers of such a court. If the charitable functions of the recipient are sufficiently similar to the dissolving corporation, both as to the geographical area served and the class of persons benefited, or type of charity furnished, the court would be justified in transferring the assets without restriction. On the other hand, where a substantial part of the charitable activities of the recipient is entirely outside the scope of activities of the dissolving corporation, either as to the area served or persons benefited or type of charity furnished, the court may and should impose such reasonable restrictions as will preserve the basic identity of charitable purpose of the dissolving corporation. No hard and fast rule can be spelled out. The decision of each must be left to the sound discretion of the trial court after a consideration of all pertinent facts.

The Orphanage by its charter was empowered to engage in caring for, educating and placing in good homes dependent children of the county. In fulfillment of its powers, it maintained a home where dependent children of the county could be brought, cared for, sent to the public schools, and placed in suitable homes if the opportunity appeared. It is self-evident from the recital of its powers that an interest in dependent children was the motivating force which prompted the organization of the Orphanage.

The Orphanage was a local organization interested in local children, and, by its charter, was limited to children of the county. Undoubtedly, when first organized there was a local problem which gave rise to a real need for a home where such children could be cared for. With the passage of time and the advent of legislation for the financial assistance of dependent children, the necessity of maintaining a home has disappeared; but who is to say that the need for such a home might not arise in the future? Neither can it be said that there is no longer need for charitable funds to aid dependent children. It should be pointed out, too, that the functions of the Orphanage

can be carried out without the maintenance of a home. By contract with suitable people for the care of such children on reasonable terms, temporary or permanent homes could be furnished for such children as applied for help. Furthermore, caring for children involves much more than supplying a roof over their heads; it includes guidance, food, clothing and medical care; their education, although never stressed by the Orphanage other than seeing the children attended public schools, is a fertile field for the use of these assets.

The trial court had many claimants for the Orphanage assets, but we are here concerned with only three, The Salvation Army to whom the assets were given, the Everly Trustees, and the Association, the unsuccessful claimants. Each claimed that its functions were most nearly approximated to those of the Orphanage.

The Everly Trustees contend that the assets should have been transferred to them as the charity whose functions most nearly approximate those of the Orphanage. The Everly Trustees under their decedent's will are charged with constructing and maintaining a home for worthy aged people of McDonough County. Their functions are similar to the Orphanage in that they are a local organization and they furnish a suitable home, but the home is for the aged, the very antithesis of the class of persons which the Orphanage was designed to aid. To turn over the orphanage assets to the trustees without restrictions would completely divert the assets from the dependent children for whom they were intended. There is no claim by the trustees that they are interested in receiving the assets with the restriction on use imposed by the trial court. There is nothing to indicate that they are peculiarly well fitted to deal with problems arising with dependent children.

The Young Men's Christian Association is local and administers to children of all ages, regardless of dependency, with emphasis being placed upon their social and

physical development through parties, meetings and contests which tend to build character. If the Orphanage assets were turned over to it without restrictions as to use and were applied by it to its usual activities only a small portion of the assets would accrue to the benefit of dependent children. On the other hand, if restrictions as imposed by the trial court were attached, it appears that their past experience with dependent children has been slight in comparison to that of The Salvation Army. The trial court did not abuse its discretion in denying the foregoing claims.

Without extending this opinion unreasonably, it suffices to say that The Salvation Army devotes its facilities to the physical and spiritual improvement of the underprivileged of all ages without regard to race or creed. Dependent children by definition fall within that class. It is peculiarly well fitted by experience to handle the problems arising with such children. It is true, of course, that The Salvation Army administers to the spiritual as well as physical needs of people of all ages on a State-wide basis, but it has for many years maintained an office and one of its officers in Macomb where local problems are handled. It would not be in keeping with the letter of the statute to transfer property which had been received for dependent children of McDonough County without restriction to The Salvation Army to dispense on a State-wide basis for the spiritual welfare of adults, which functions are beyond the scope of the functions of the Orphanage. The trial court was correct in placing the restrictions which it did upon the transfer of the assets to be received from the Wright estate. It could well have imposed the same restriction upon all assets transferred from the Orphanage but did not do so. What we have heretofore said disposes of the cross error assigned by The Salvation Army.

The decree of the circuit court is affirmed.

*Decree affirmed.*