THE PRESBYTERIAN CHURCH OF CARLYLE, Plaintiff-Appellant, *v.* ST. LOUIS UNION TRUST COMPANY *et al.*, Defendants-Appellees.

(No. 73-72;

Fifth District—April 10, 1974.

Bernard G. Heiligenstein, of Carlyle, for appellant.

Warren, Carlisle & Dominguez, of Carlyle, for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Clinton County, dismissing plaintiff-appellant's complaint for an order that the proceeds of a trust are distributable to the plaintiff.

Charles W. Parker died testate April 13, 1956, survived by his wife, Emma Parker. His will was probated in St. Louis, Missouri. The will of Charles W. Parker provided in pertinent part that the residue of his estate be devised in trust to Liberty Central Trust Company as trustee (St. Louis Union Trust Company, a Missouri corporation, defendant herein, succeeded to this position by virtue of a codicil to the will of Charles W. Parker) for the use and benefit of the life tenant, Emma

Parker, Charles Parker's surviving widow. The will then provided that upon the death of Emma Parker the remainder of the trust corpus would be divided equally between the Presbyterian Church of Carlyle, Illinois, an Illinois corporation and plaintiff herein, and William H. Parker, a brother of the decedent and a defendant herein; but if William H. Parker was not living at the death of Emma Parker, then his share should vest in the plaintiff, the Presbyterian Church of Carlyle. On December 17, 1958, Emma Parker died and the trust thereby terminated and became distributable.

Upon this termination of the trust the defendant St. Louis Union Trust Company held and still holds the distributable share of the defendant William H. Parker in the amount of $8300. Subsequent to the termination of this trust, certain realty, being a part of the trust corpus, was sold by the trustee and the proceeds of the sale, in the amount of $10,900, being also a portion of the distributive share of the defendant William H. Parker, were held in escrow by St. Louis Title and Abstract Company and are now held in escrow by their successor, Guaranty Land Title Company, a Missouri Corporation, and a defendant herein. The funds held by the defendants, St. Louis Union Trust Company and Guaranty Land Title Company, are being held until a determination is made whether the defendant William H. Parker is alive or died subsequent to Emma Parker, in which event he would have died seized of his distributive share, or whether he predeceased Emma Parker, thus vesting his distributive share of the trust in the plaintiff. Plaintiff brings this suit to secure a determination that William H. Parker predeceased Emma Parker and that title to his distributive share of the trust vested in itself. Defendants-appellees prayed in their answers that the cause be dismissed either for lack of jurisdiction or under the common law doctrine of *forum non conveniens*. Alternatively, they prayed that plaintiff be required to prove his allegations.

Without going into the specifics of the method or the extent of the inquiry, attorney for the plaintiff stated by affidavit that, after due and diligent inquiry, he was unable to determine whether defendant William H. Parker is living or dead and that he has been unable, after due and diligent inquiry, to find William H. Parker or to ascertain his place of residence or his former place of residence. The affidavits stated that a diligent inquiry had been made to ascertain these facts, but no description of the mode or extent of such inquiry was included therein. In their respective answers defendants St. Louis Union Trust Company and Guaranty Land Title Company do not dispute plaintiff's affidavits with respect to the whereabouts of William H. Parker, but they deny any knowledge of the status of William H. Parker. Plaintiff's attorney further

stated by affidavit that due and diligent inquiry has failed to disclose the names or addresses, present or former, of any of the unknown heirs or devisees of William H. Parker or of any unknown owners (parties who might conceivably have taken an interest from either William H. Parker or the unknown heirs or devisees of William H. Parker). Again, the mode and extent of such inquiry were not revealed by the affidavit. Defendants St. Louis Union Trust Company and Guaranty Land Title Company deny any knowledge of the existence, identity or whereabouts of the parties. The record fails to disclose and the respective briefs fail to discuss the last abode, residence or domicile from which William H. Parker allegedly disappeared. Neither may it be ascertained therefrom the date upon which William H. Parker allegedly disappeared.

Plaintiff filed this suit in the circuit court. Defendants, St. Louis Union Trust Company and Guaranty Land Title Company, made a general entry of appearance in that court. The defendants William H. Parker, unknown heirs and devisees of William H. Parker, and unknown owners made no appearance. These parties were served with notice by publication, complying in form with the statute (Ill. Rev. Stat., ch. 110, § 14), in a newspaper of general circulation in Breese, Clinton County.

Although no motion appears in the record, the court apparently treated the prayers of the respective answers as raising questions of law to be determined by the court, before proof was to be offered.

On January 17, 1973, having heard and considered arguments of counsel with respect to an attack on the jurisdiction of that court to hear and determine this cause, the court entered a ruling and order, dismissing the cause; however, the ruling upon which this order was issued makes less than lucid the basis for the dismissal. It is unclear whether the grounds for dismissal were lack of subject matter jurisdiction, lack of personal jurisdiction of the necessary parties, or *forum non conveniens*. The circuit court found that there was jurisdiction over defendants, St. Louis Union Trust Co. and Guaranty Land Title Co. The court also found that this jurisdiction was sufficient to allow the court to order these defendants to pay over the trust corpus to plaintiff. The court found that it is "doubtful that such a notice [notice by publication] can be the basis for a personal judgment against" defendants, William H. Parker and his unknown heirs or devisees. The court did not find that it lacked jurisdiction of these latter defendants and it did find it had jurisdiction to enter an order for plaintiff, which finding would necessarily require a determination of the status of defendant, William H. Parker. Therefore it is not illogical to construe this ruling as finding proper subject matter jurisdiction.

Although the court speaks in terms of a "lack of proper jurisdiction

over all the necessary parties" in the order, there is no reference to necessary parties or *forum non conveniens* in the ruling. The court's reasoning in the ruling, that "[a] judgment of this court would be subject to attack in the State of Missouri" and that Missouri is "the only forum where the rights of all can be decided and terminated with finality", strongly indicates that the legal doctrine whose elements support the circuit court's order is that of *forum non conveniens*.

In brief summary, it is that court's opinion that the trial court entered its order dismissing this cause on the basis of the common law doctrine of *forum non conveniens* while finding, necessarily, that it had proper jurisdiction of both the cause and the parties.

The first issue to be resolved, therefore, is whether the courts' order was properly based on *forum non conveniens*.

The doctrine of *forum non conveniens* was recognized in Illinois in the case of *Whitney v. Madden* (1948), 400 Ill. 185, 79 N.E.2d 593. The doctrine is grounded in equity and relies on a type of balancing technique which is found in equitable decisions. In general, most courts are reluctant to dismiss for *forum non conveniens* unless the factors considered balance heavily in favor of the defendants. *Nelson v. Miller* (1957), 11 Ill.2d 378, 143 N.E.2d 673.

Of the many cases interpreting this equitable action in Illinois, very few relate to what should be contained within the defendant's motion for dismissal when based on this ground.

In the case of *Fender v. St. Louis S.W.R.R.Co.* (1971), 49 Ill.2d 1, 273 N.E.2d 353, a showing that the action was brought in a specific forum for the purpose of frustrating, unduly burdening, or causing a great and unnecessary inconvenience to the defendant was *not* required before a motion to dismiss on *forum non conveniens* grounds will be granted. However, this case narrowed the scope of this holding to those cases brought under the FELA.

The *Fender* case indicates the trend away from the rather harsh requirement set forth in dictum in the case of *Continental Casualty Co. v. Hartford Accident & Indemnity Co.* (1960), 28 Ill.App.2d 177, 171 N.E. 2d 28. The court there criticized the motion to dismiss for not including the charge of harassment as a factor in an action to dismiss under *forum non conveniens*.

The *Fender* case also held that a proponent of such a motion is not required to support his motion with a comparative statistical analysis of calendar congestion in the original forum and in other jurisdictions if this factor was one brought up in support of the motion.

On the other hand, in the case of *Lonergan v. Crucible Steel Co. of America*, (1967), 37 Ill.2d 599, 229 N.E.2d 536, the defendants alleged

that Illinois was not the most convenient forum, but did not state which forum would be better and did not support a second assertion of a serious backlog of cases with evidence as to the condition of the dockets. Further research indicated that the defendants did not claim an inability to defend in Illinois, nor did they claim that the defense of the action in Illinois would be vexing or harassing. The court retained jurisdiction.

With the case of *People v. Donovan* (1964), 30 Ill.2d 178, 195 N.E.2d 634, the Illinois courts have not required the intentional element of harassment to be present in a motion to dismiss under the *forum non conveniens* doctrine.

The Supreme Court, in the case of *Gulf Oil Corp. v. Gilbert* (1947), 330 U.S. 501, set forth some of the factors which would be acceptable in determining an action under *forum non conveniens:*

(1) Relative ease of access to sources of proof;

(2) Availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; and

(3) Possibility of view of premises, if view would be appropriate.

Looking at the motion to dismiss in the present action, the grounds stated under the doctrine of *forum non conveniens* are:

One, both defendants are domiciled in the State of Missouri and the trust *res* is located in the State of Missouri;

Two, the testator's will was probated in the State of Missouri; and

Three, judgment rendered in Illinois *may* not be given full faith and credit by the courts of the State of Missouri.

■■ Since both defendants made appearances in the Illinois trial court, many of the factors claimed under *forum non conveniens* would be inapplicable here. Neither is there any allegation of vexation or harassment by the plaintiff upon the defendants in this action. Docket congestion has not been called into question. In light of the absence of those factors which would support the trial court's decision, the dismissal under the doctrine of *forum non conveniens* cannot stand.

However, we find that the trial court properly dismissed the plaintiff's complaint, for it did not allege sufficient facts upon which relief could be predicated.

In order for the plaintiff to state a cause of action in this case, it must establish that, at the time of the filing of the complaint, it has a definite, identifiable interest which, if the court would not act, it would be deprived of. This interest must be readily obtainable upon the action taken by the court.

The will of Charles H. Parker, dated November 28, 1925, provides as follows:

"Upon the death of my wife, my Trustee shall divide the property then constituting the trust estate into two equal parts, and shall pay over and distribute one of such parts to the Presbyterian Church at Carlyle, Illinois, and the other part to my brother, William H. Parker, if he is then living. In the event he is not living at the time of my wife's death, his share of the trust estate shall be paid over and distributed to the Presbyterian Church at Carlyle, Illinois."

The question arises as to what interests were obtained by the parties involved. The testator's wife obtained a life estate. The plaintiff obtained a vested remainder in the one-half of the estate left directly to it after the death of the testator's wife. The two interests which pose problems are the interest of William H. Parker and the interest of the plaintiff in that portion of the estate originally left, after the expiration of the life estate, to William H. Parker.

■■■ A remainder is a future interest created in favor of a transferee which can become possessory only upon the natural termination of a prior possessory freehold estate created by the grantor at the same time and in the same conveyance which created the remainder interest. A vested remainder is a remainder created in favor of a person in existence and ascertained who has a right of possession whenever and however the preceding estate naturally terminates. (*Ruddell v. Wren* (1904), 208 Ill. 508, 70 N.E. 751; *McDonough County Orphanage v. Burnhart* (1955), 5 Ill.2d 230, 125 N.E.2d 625.) However, a vested remainder may be defeated upon the happening of a condition subsequent. This seems the logical estate of William H. Parker. The conveyance would read: "To A for life, remainder to B and his heirs, but if B should fail to survive A, then to C." *Hill v. Hill* (1914), 264 Ill. 219, 106 N.E. 262.

■■■ An executory interest is a future interest created in one other than the grantor which is not a remainder. An executory interest vests upon the happening of a condition or event and in derogation of a vested freehold estate. (*Ashby v. McKinlock* (1915), 271 Ill. 254, 111 N.E. 101; *Blackstone v. Althouse* (1917), 278 Ill. 481, 116 N.E. 154.) The estate of William H. Parker was a vested remainder subject to a condition subsequent. This estate was in fee simple. If William H. Parker did die before the death of the life tenant, then his remainder in fee, subject to a condition subsequent, would end before its natural termination. Hence, the plaintiff would have an executory interest in that portion of the property.

If it could be determined that William H. Parker died before the life tenant, then the condition subsequent would arise and the vested remainder would end, thereby vesting the plaintiff's executory interest.

If it could be determined that William H. Parker died subsequent to

the death of the life tenant, then the vested remainder would remain such, and any interest would pass to the heirs or devisees of said William H. Parker.

In its complaint, the plaintiff specifically stated that the relief which was requested was to decree that William H. Parker predeceased Emma Parker, the life tenant of the trust property.

■■■ The equity court can only make a determination of death by using the 7-year presumption of death.

> "The rule of law is well established that the continuous absence of a person from his home or place of residence for seven years, during which period nothing is heard from or concerning him, raised the presumption of his death for all legal purposes. [Citations.]" McNaghten v. Northwestern Mutual Life Insurance Co., 318 Ill.App. 390, 400, 48 N.E.2d 200, 204.

However, in the absence of evidence, the 7 year presumption does not presume that death took place at any particular time. *Apitz v. Supreme Lodge Knights & Ladies of Honor* (1916), 274 Ill. 196, 113 N.E. 63.

■■ An examination of the Illinois cases indicates that the prerequisites which give rise to a presumption of death after 7 years of continuous absence are: (1) that the person whose death is in question has disappeared from his last known abode, domicile or place of residence; (2) that he has neither returned thereto nor communicated with those with whom he would naturally communicate, if alive, during the ensuing period of 7 years; (3) that diligent inquiry has been made at his last known place of abode of the persons who would naturally hear from him without obtaining information indicating that he is alive. Out of such proof, a presumption is rebuttable and may be disproved by competent evidence that the party so presumed to be dead is in fact alive. *Carey v. Metropolitan Life Insurance Co.* (1940), 305 Ill.App. 308, 27 N.E.2d 634; *Piersol v. Massachusetts Mutual Life Insurance Co.* (1931), 260 Ill.App. 578.

In order to determine what elements of the presumption are usually required at the pleading stages, an investigation into the Illinois law on the subject has revealed some constants which seem to appear in the complaint whenever the court has referred to them.

In *Kennedy v. Modern Woodmen of America* (1910), 243 Ill. 560, 90 N.E. 1084, the complaint was referred to on page 564:

> "The declaration, in substance, averred that James Kennedy, on the 13th day of December, 1898, suddenly and without explanation left and departed from his home, situated near Tuscola, in Douglas County, and that he has been unaccountably absent, and has never returned to his home or been heard of by the appellee

although she has made diligent and continuous search for him ever since his disappearance, * * * and that by reason of his continued absence for seven years the law presumes said James Kennedy to be dead, * * *."

In *Steen v. Modern Woodmen of America* (1920), 296 Ill. 104, 105, 129 N.E. 546, the petition was extensively referred to by the court:

"* * * on the 7th day of May, 1910, Albert F. Steen disappeared from his home in the city of Chicago and has been unaccountably absent ever since; that he left with the intention of returning the same day, but has never returned; that diligent and continuous search and inquiry have been made for him by appellant but she has been and is wholly unable to find or locate him; that on the 7th day of May, 1917, the absence of Albert F. Steen had continued 7 years, and that Albert F. Steen was presumed by law to be dead; * * *."

In *McNaghten v. Northwestern Mutual Life Insurance Co.* (1943), 318 Ill.App. 390, 392, 48 N.E.2d 200, the court referred to a very specific complaint:

"* * * that on December 11, 1926, the assured disappeared from his home and family at Farmer City, Illinois; that he wrote a postal card from Chicago to his youngest son on that date, but was never thereafter seen nor heard from by any member of the family, friends, acquaintances or other persons, so far as plaintiffs knew or were able to ascertain after diligent inquiry and effort to locate him; that * * * at the expiration of seven years and within the term of said extended insurance, the assured in fact died or became presumptively dead * * *."

The factors which seem to run uniformly throughout the cited cases are: (1) a specific date upon which the missing person disappeared an·¹ which is the date upon which the presumption began to run; (2) a description of the place from which the disappearance took place (some complaints were very specific and some rather general; however, all attempted to pinpoint the place from which the person presumptively dead had disappeared); (3) those persons who should have heard something from the missing person were described, if not the plaintiff himself; and (4) a statement that a diligent inquiry had been made to ascertain the whereabouts of the missing person.

■■■ The will of Charles H. Parker stated that his brother, at the time of the creation of the will, was living in Kentucky. This, it seems, was the last known abode of William H. Parker. However, the plaintiff's complaint does not allege any date from which the 7-year presumption should operate, nor does it allege any inquiry into the last known abode

722

of said William H. Parker. A court of equity cannot determine that a particular person has died before a particular time—the death of the life tenant—if facts are not alleged which support a last-known place of abode, and a last-known report that the missing person was at this said abode. Without these facts alleged, a court of equity cannot make a determination that the missing person is in fact dead, let alone that he died at a particular time. Hence, the plaintiff, under his present complaint, has failed to allege facts sufficient to state a cause of action for the relief requested. Upon a determination of such facts, and their proper allegation, we know of nothing that would bar filing a new action in which the court could determine its jurisdiction of the proper parties and subject matter, and, if jurisdiction exists, make a determination of the applicability of the presumption of death doctrine.

Our resolution of this issue makes it unnecessary to consider the other arguments which the parties have raised on this appeal.

Accordingly, the decision of the trial court is affirmed.

G. MORAN, P. J., and CREBS, J., concur.