(No. 55839.—

*In re* ESTATE OF E. W. MORRISON (Gaither Collier, Indv. and as Adm'r, Appellant, v. Edward Rosewell, County Treasurer, *et al.*, Appellees).

*Opinion filed September 30, 1982.*

Marsha F. Weis, of Stuart M. Weis and Associates, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey and Peter S. Coorlas, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE CLARK delivered the opinion of the court:

This action was brought by Gaither Collier, individually and as administrator of the estate of Warner Collier, to have letters of administration issued upon the presumption of death of E. W. Morrison. The Cook County treasurer is holding funds in the amount of $3,815.13 for the benefit of E. W. Morrison, which were deposited under the estate of Nettie Stevenson, who died intestate in 1971, and left E. W. Morrison and Warner Collier as her sole heirs.

A one-half interest in a parcel of Illinois real estate was also distributed to Morrison as a result of the Nettie Stevenson estate proceedings.

The plaintiff, Gaither Collier, is the sole heir of the estate of Warner Collier. If E. W. Morrison is presumed dead the plaintiff is entitled to the funds held by the Cook County treasurer.

The circuit court of Cook County found that E. W. Morrison is presumed dead as of January 1, 1937. Letters of administration were thereupon issued to the plaintiff. The appellate court reversed the trial court's order issuing letters of administration upon the presumption of death, finding that the evidence was clearly insufficient to establish the prerequisites for a presumption of death. 100 Ill. App. 3d 891.

The record indicates that Morrison was an unmarried man without children in 1929, whose parents were both deceased. As of 1932, Morrison had three living relatives: Adelia Morrison Bland, his sister; Nettie Stevenson, Adelia Morrison Bland's daughter, his niece; and Warner Collier, his nephew, the now deceased husband of the plaintiff.

It is necessary to recount the testimony of Gaither Collier to establish the facts upon which the trial court relied in determining that a legal presumption of death had arisen in the case of E. W. Morrison.

Gaither Collier married Morrison's nephew, Warner Collier, in 1932. She had known Warner Collier since approximately 1925. The plaintiff had met Morrison on two occasions in 1929. She met E. W. Morrison for the first time in Earle, Arkansas, where the Colliers resided. The plaintiff met E. W. Morrison for the second and last time at his home in Memphis, Tennessee. At that meeting the plaintiff indicated that Morrison, then approximately 28 or 29 years old, appeared to be sick. After 1929 Warner and Gaither Collier never again saw, heard from, or heard anything about E. W. Morrison.

From 1929 to 1935 Warner and Gaither Collier traveled to Memphis, which was about 30 miles from Earle, Arkansas, at least once or twice a year. In 1935 the Colliers moved to Chicago, but continued to travel to Memphis approximately once a year. During these trips Mr. and Mrs. Collier visited Mrs. Collier's relatives but never attempted to contact E. W. Morrison.

In or around 1946 the plaintiff lived in the same apartment with the three living blood relatives of E. W. Morrison: Adelia Morrison Bland, Nettie Stevenson and Warner Collier. To the best of her knowledge, none of them had seen or heard from Morrison or received any letters or phone calls from or any information about him.

In 1972, when questions arose concerning the estate of Nettie Stevenson, Warner Collier attempted to contact E. W. Morrison (43 years had now elapsed since their last meeting). Accompanied by a friend, Leo Armstrong, Warner Collier traveled to Memphis to look for Morrison. Leo Armstrong testified as to the details of the trip. Upon arriving in Memphis, Armstrong and Collier went to an address on East Iowa Street where Morrison had lived in 1929. They found a vacant lot at that address. Armstrong and Collier then went to see a friend, John Thomas, and told him about their search for E. W. Morrison. He suggested that they have an an-

nouncement placed on a local radio station asking for any information concerning Morrison. John Thomas called a Memphis radio station to have the announcement aired, but no listeners ever called with any information about Morrison. Collier, Armstrong and Thomas went to the site of the Goldcrest Brewery where E. W. Morrison had worked in 1929. Upon their arrival they discovered that the brewery had burned down. Subsequently, they went to a cafe a couple of blocks away from the site of the brewery. Inquiries were made at the restaurant, but no information was gained about Morrison. Warner Collier then contacted the Missing Persons Bureau, the Social Security Administration and the police department. He was unable to obtain any information regarding E. W. Morrison.

The plaintiff testified that in 1973 she asked her niece, Perlie Mae Gillum, who lived in Memphis, to make an inquiry at the local courthouse for any information concerning E. W. Morrison. We do not know how extensive that inquiry was. We do know Miss Gillum's search did not reveal any information. The plaintiff also wrote to the city of Memphis seeking information about Morrison. The city responded that all efforts to locate E. W. Morrison were without success.

The trial court record also shows that the plaintiff's attorneys attempted to obtain a death certificate from the proper authorities in Memphis. The authorities indicated that there was no death record on file for E. W. Morrison.

The trial court found that E. W. Morrison has been missing since 1929, that he has not communicated with those with whom he would naturally communicate, that diligent inquiries have been made at his last known address in an attempt to discover his whereabouts, and that the inquiries did not reveal any information that would indicate that E. W. Morrison is alive. The appel-

late court reversed the trial court's judgment, concluding that the evidence was clearly insufficient to establish the prerequisites for a presumption of death.

The issues before this court are: (1) What are the necessary prerequisites to raise a presumption of death? and (2) Was the evidence clearly insufficient to establish those prerequisites?

The plaintiff asserts that Illinois case law on the subject of presumptions of death is contradictory and incomprehensible. To the contrary, while the rule as announced in our decisions and decisions of our appellate court varies to some degree in the form of expression, it is clearly deducible from a careful reading of our case law what is required to establish a presumption of death.

The presumption of death is raised where (1) a person has disappeared or is continuously absent for seven years from his home without explanation, (2) those persons with whom he would likely communicate have not heard anything from him or about him, and (3) a diligent search has been made at his last known place of abode without obtaining information that he is alive. (*Kennedy v. Modern Woodmen of America* (1910), 243 Ill. 560, 566; *Donovan v. Major* (1911), 253 Ill. 179, 181; *Presbyterian Church v. St. Louis Union Trust Co.* (1974), 18 Ill. App. 3d 713, 720; *Blodgett v. State Mutual Life Assurance Co.* (1961), 32 Ill. App. 2d 155; *McNaghten v. Northwestern Mutual Life Insurance Co.* (1943), 318 Ill. App. 390, 400; *Carey v. Metropolitan Life Insurance Co.* (1940), 305 Ill. App. 308, 312; *Mueller v. John Hancock Mutual Life Insurance Co.* (1935), 280 Ill. App. 519, 523; *Piersol v. Massachusetts Mutual Life Insurance Co.* (1931), 260 Ill. App. 578, 587.) The presumption of death needs to be established only by a preponderance of the evidence (*Kennedy v. Modern Woodmen of America* (1910), 243 Ill. 560, 575), although it is a rebuttable presumption that can be disproved by evidence showing the person

presumed to be dead is alive (*Presbyterian Church v. St. Louis Union Trust Co.* (1974), 18 Ill. App. 3d 713).

Death may also be inferred if survival of the person to the date in question would be beyond human expectation or experience. (22 Am. Jur. 2d *Death* secs. 299, 305 (1965); 19 Am. Jur. Proof of Facts 2d 391 (1979); *In re Katz's Estate* (1930), 135 Misc. 861, 239 N.Y.S. 722.) But an absent person's old age, standing alone, if less than 100 years, has been held not to raise a presumption of death. (*In re Estate of Holmlund* (1962), 232 Or. 49, 57, 374 P.2d 393, 396.) We cannot say on the basis of E. W. Morrison's age alone (38 as of 1937) that he is dead.

There is no basis to presume E. W. Morrison was dead as of 1937, since there has not been a scintilla of evidence presented that E. W. Morrison was absent without explanation from his residence (*Donovan v. Major* (1911), 253 Ill. 179, 181) from 1929 to 1937. The plaintiff's evidence is clearly insufficient to establish the first prerequisite. This court has said:

> "[M]ere absence of a person from a place where his relatives reside, but which is not his own residence, and mere failure on the part of his relatives to receive letters from him for a period of seven years, are not of themselves sufficient to raise a presumption of death. The absence must be from his usual place of abode or resort." (*Hitz v. Ahlgren* (1897), 170 Ill. 60, 64.)

The plaintiff cannot assert Morrison was absent or had disappeared simply because he had not communicated with any of his relatives. The trial court shows that Warner and Gaither traveled to Memphis at least once a year between 1929 and 1937. There is no indication that the plaintiff and her husband made any attempts to contact Morrison on any of those occasions. Because Warner and Gaither Collier had not returned to E. W. Morrison's last known address in Memphis, one cannot therefore assume that E. W. Morrison had disappeared. (See *Modern Woodmen of America v. Ghromley* (1914), 41 Okla. 532, 139 P. 306.)

One could just as reasonably conclude that E. W. Morrison continued to live on East Iowa Street in Memphis up until 1937. The first date as of which the plaintiff's evidence shows that Morrison was absent from his last known address was 1972, when Warner Collier and Leo Armstrong discovered upon their inquiry that the residence on East Iowa Street had been demolished.

Since it was not demonstrated that Morrison was missing until 1972 it was clearly erroneous for the trial court to find that Morrison is presumed dead as of January 1, 1937. A person's absence since 1972 from what was once known to have been his residence, which could conceivably satisfy the first prerequisite to raise a presumption of death in 1979, does not establish a sufficient basis to declare a presumption of death as of 1937.

We do, however, disagree with the appellate court's holding that the plaintiff failed to establish the second prerequisite of the presumption of death—that E. W. Morrison failed to communicate with those with whom he would most naturally communicate. No known blood relative has heard from or about E. W. Morrison since 1929. It cannot be said that the plaintiff's evidence was clearly insufficient as to the second prerequisite. It is, however, axiomatic to say that a person whose whereabouts is being questioned has not been shown to be missing through failure to communicate with those with whom he would be most likely to get in touch. Failure to communicate does not, in and of itself, demonstrate that the person has disappeared. By establishing the second prerequisite the plaintiff has not obviated the need to establish the first prerequisite—that E. W. Morrison has disappeared.

As to the third prerequisite to establish a presumption of death, we cannot find error in the finding of the circuit court that a diligent search was conducted. We have set forth the details of the search as related to the trial court by the testimony of Gaither Collier and Leo Armstrong.

The fundamental requirement is that the search at the last known place of residence be diligent.

A diligent inquiry is one that a reasonably prudent person would make in similar circumstances. It should encompass all of the places where information is likely to be obtained and extend to all of the people who would be likely to hear from the missing person. (*In re Estate of Holmlund* (1962), 232 Or. 49, 374 P.2d 393; *Donea v. Massachusetts Mutual Life Insurance Co.* (1945), 220 Minn. 204, 209, 19 N.W.2d 377, 381.) As we review what was and what was not done in the search for E. W. Morrison, we share the defendant's concern over certain deficiencies. No inquiries were made as to whether a marriage certificate was issued in his name in Memphis. E. W. Morrison was 29 years old the last time he was seen by the plaintiff. A check with the proper authorities for a certificate of marriage is an inquiry which should have been made. There was no evidence that indicates local postal authorities were contacted to inquire as to a forwarding address. No questions were asked of local utility companies to see if their records indicated the last time E. W. Morrison received their services. No attempt was made to find out when the house that E. W. Morrison lived in was torn down, and no attempt was made to contact the owners of the brewery at which E. W. Morrison worked in order to look at employment records. As we look at the record, the search does not appear to be the most comprehensive ever undertaken. However, because the course of inquiry suggested by the defendant is one that should have been followed, the failure to do all that we now see as constituting a completely thorough search need not be regarded as conclusive evidence that a diligent search was not made. (*Lichtenhan v. Prudential Insurance Co. of America* (1915), 191 Ill. App. 412, 416.) And while we would not characterize the inquiries made as being inordinately thorough, in considering all of the facts and circum-

stances of the case we cannot say that the circuit court's finding that a diligent search was conducted was erroneous.

However, in view of our holding as to the lack of any evidence establishing E. W. Morrison's absence from his home from 1929 to 1937, we must reverse the trial court's order issuing letters of administration based upon the presumption of death as of January 1937.

Accordingly, the judgment of the appellate court reversing the order of the circuit court is affirmed.

*Judgment affirmed.*