195 F.Supp.2d 1052 (2002)
ESTATE of Charles SLACK, Deceased.
Louis G. Apostal, Petitioner,
v.
Laborer's Welfare And Pension Fund,[1] Respondent.
No. 02 C 354.
United States District Court, N.D. Illinois, Eastern Division.
April 4, 2002.
*1053 Barry A. Feinberg, Chuhak & Tecson, Chicago, IL, for petitioner.
Stephen Gary Katz, Dowd, Bloch & Bennett, Chicago, IL, for respondent.

MEMORANDUM OPINION AND ORDER
SHADUR, Senior District Judge.
This portion of a state court probate proceeding, a "Petition for the Issuance of a Citation To Recover Assets" ("Petition") in Case No. 00 P 3016 in the Probate Division of the Circuit Court of Cook County, has been removed to this federal court by Laborers' Pension Fund ("Fund") on federal question groundsas posing an issue under ERISA, more specifically its 29 U.S.C. § 1132(a).[2] Fund claims that the effort by Louis Apostal ("Apostal"), acting as Supervised Administrator of the Estate of presumptively adjudicated decedent Charles Slack ("Slack"), to recover pension benefits allegedly owed to Slack as a Fund participant is completely preempted by Section 1144.
At this Court's request the parties have submitted memoranda on what they agree is a question of first impression, not having been addressed in any reported decision anywhere. Here are the circumstances in brief summary:
1. Slack's brother-in-law Robert Marshall has tendered an affidavit stating that Slack dropped out of sight, so far as he and his wife (Slack's sister) were concerned, when Slack left their home in 1989.
2. On the other hand, Fund's Trustees regularly require all pensioners (on not less than an annual basis) to certify that they are currently receiving their monthly pension checks and are endorsing *1054 them personally for their own use. Ex. B to Fund's Notice of Removal (a photocopy of which is attached to this opinion as Ex. 1) reflects that on February 8, 1992 Slack signed and returned a notarized certificate to Trustees confirming those things.
3. When Slack's sister advised Fund later in 1992 that Slack was missing, Fund had investigators try to trace him or alternatively to seek evidence of his death. When that search turned up nothing, Fund stopped mailing any further monthly benefit checks.
4. In 2000 an estate was opened for purposes of seeking a declaration of Slack's presumptive death under Illinois law, as exemplified by Estate of Morrison v. Rosewell, 92 Ill.2d 207, 212, 65 Ill.Dec. 276, 441 N.E.2d 68, 71 (1982) (citations to a host of cases are omitted from this quotation):
The presumption of death is raised where (1) a person has disappeared or is continuously absent for seven years from his home without explanation, (2) those persons with whom he would likely communicate have not heard anything from him or about him, and (3) a diligent search has been made at his last known place of abode without obtaining information that he is alive. The presumption of death needs to be established only by a preponderance of the evidence, although it is a rebuttable presumption that can be disproved by evidence showing the person presumed to be dead is alive.
That resulted in an August 24, 2000 order by a judge of the Probate Court (a photocopy is attached to this opinion as Ex. 2) that declared Slack's presumed date of death to have been August 31, 1996.[3]
As Apostal would have it, the Probate Court order is conclusive: Because the order says that Slack was presumed dead as of August 31, 1996, Apostal as administrator assertedly stands in his shoes (wherever they may be) and is therefore entitled to the 50 months of pension payments that purportedly accrued after the last one signed for by Slack in June 1992. For its part, Fund responds by urging the preemptive force of Section 1144 as assertedly trumping any effect to be ascribed to the state's common law doctrine of presumed death. From Fund's perspective, Apostal "seeks to create a new survivor's benefit not available under the Plan, a benefit payable to an estate." This Court finds neither of those positions persuasive as framed, but it is nonetheless clear (1) that the removal is well-founded because ERISA is squarely implicated and (2) that familiar ERISA principles spell doom for Apostal's effort.
Section 1144(a) states a sweeping rule of ERISA preemption:
Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
*1055 And that provision has consistently been given an expansive reading by the United States Supreme Court and all lower courtssee, e.g., Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), which upheld the removal of an action that was framed in state common law terms but was still found to "relate to [an] employee benefit plan." Just as was true in Metropolitan Life, then, the effect of Section 1144(a) here is that Apostal's Petition must be viewed as an actionhere purportedly on behalf and in the stead of a plan beneficiary to recover benefits as authorized by Section 1132(a), so that Fund's removal of the Petition to this federal court was solidly grounded.
But that does not answer the question before this Court, for Section 1144(a) does not necessarily mean that there is no room for the application of state common law doctrines that do not run afoul of ERISAsee, e.g., Yarde v. Pan Am. Life Ins. Co., reported in table at 67 F.3d 298, 1995 WL 539736 (4th Cir.1995), cited at Apostal Mem. 3.[4] And neither side has thought the problem through.
What Fund's counsel has plainly overlooked is that his argumentthat Section 1144(a) provides the conclusive answer because Apostal is seeking payment of a death benefit not provided by the terms of the Plan (rather than seeking to recover unpaid pension benefits)has to be bottomed on the premise of Slack's death back in 1992. And of course that has not been established in factual terms, either by the Probate Court order or in any other way. As for Apostal's counsel, what he has plainly overlooked (even apart from the dubious effect of a Probate Court order that speaks only of Slack's presumed date of death in 1996, and that appears to have been entered without notice to Fund, which could have offered evidence to rebut the presumption and presumably thus to prevent entry of the ordersee n. 3[5]) is that Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) and its host of progeny teach that benefit eligibility decisions such as this one, made by employee benefit fund administrators vested with broad discretion by their employee benefit plans, must be upheld unless they are both "arbitrary and capricious."
In this instance both the applicability and the application of the Firestone Tire principle are plain indeed:
1. Section 8.3 of the Laborers' Pension Plan ("Plan") establishing Fund vests in Fund's Trustees the kind of discretion that every well-drafted plan has included since Firestone Tire (if not before that):
The Trustees shall, subject to the requirements of the law, be the sole judges of the standard of proof required in any case and the application and interpretation of this Plan; and *1056 decisions of the Trustees shall be final and binding on all parties.
2. As Ex. 1 to this opinion reflects, Trustees have decided to construe the provision of Plan § 8.5(c) that "[p]ension payments shall end with the payment for the month in which the death of the Pensioner occurred" as making Trustees "required to see that every retired employee is personally receiving and endorsing his pension checks...."
There is clearly no way in which the just-stated interpretation of the Plan's provision for the payment of pension benefits to retired employees can be viewed as either arbitrary or capricious, let alone both (if those standards differ). It is impossible to quarrel, under the principles that are applicable to employee benefit plans, with a position in which Trustees thus stand ready to pay Slack all of the benefits to which he is entitled as and when he lays claim to them.
After all, any claim that is made by Apostal (or anyone else) on the premise that Slack is presumptively dead necessarily poses the possibility that if Slack actually died before that presumptive date, what is being sought by the claimant is indeed a death benefit not authorized by the Planand that possibility is clearly enough, under the Firestone Tire doctrine, to require approval of the Trustees' interpretation of the Plan. It must be remembered that Trustees owe fiduciary obligations to all of Fund's beneficiaries and potential beneficiariesand in those terms Fund's Mem. 7 has it right:
Only Charles Slack himself has a claim to those funds; otherwise the Trustees retain full right, title and interest to such funds for the purpose of paying benefits to other living pensioners and surviving spouses.

Conclusion
Apostal's petition is totally at odds with the Plan and the Fund created pursuant thereto. Accordingly his petition is denied with prejudice, and this action is dismissed.
*1057 
*1058 
NOTES
[1] Though this is the name set out in the Petition, respondent's correct name is "Laborers' Pension Fund."
[2] Further citations to ERISA provisions will simply take the form "Section -," using the Title 29 numbering rather than ERISA's internal section numbering.
[3] That order seems puzzling in light of the notarized response from Slack referred to in paragraph 2, for only 4-1/2 years rather than the presumptive common law seven year period had elapsed since the date of that response. It seems doubtful (at a minimum) that the information about that sworn response was made known to the state court judgeafter all, the common law rule is only presumptive, and the last sentence just quoted from Morrison says that "evidence showing the person presumed to be dead is alive" overcomes the presumption. But as this opinion later makes plain, this Court need not ultimately resolve the question whether the Probate Court order was mistakenly entered.
[4] Although Yarde also addressed a state presumption-of-death doctrine, it did so in a totally different context from the present one: It simply confirmed that a plan's death benefit would not be paid until the covered employee's death had been established, and that establishment could take the form of a presumption in the absence of actual proof of death. That easily-reached and straightforward ruling really has no bearing on the critically different situation posed here. And that factor of its true nonrelevance is heightened by the fact that even the citation of such unpublished dispositions is disfavored by the originating court itselfsee Fourth Circuit Rule 36(c).
[5] This opinion is not hinged on those likely deficiencies, for that would do nothing more than to postpone Apostal's claim to a later datesay seven years after June 1992when another (and this time nonattackable) Probate Court order could be obtained and a substantially larger number of months of claimed "pension payments" could then be sought to be recovered by Apostal.